### EDNA M. SCARBOROUGH v. WORLD INSURANCE COMPANY.

(Filed 26 September, 1956.)

**1. Insurance § 38—**

Death of insured resulting directly from insured's voluntary act and aggressive misconduct, or from an act culpably provoked by insured, ordinarily is not death by "accidental means" within the coverage of a policy of insurance, even though the result may be such as to constitute accidental death. The distinction between "accidental" death and death by "accidental means" pointed out.

**2. Same—**

Evidence tending to show that insured was the aggressor and demonstrated an attempt to do violence to the person of the witness, causing the witness to push him away to protect himself and home, that insured fell back and struck his head against a water meter, causing death, does not disclose death from bodily injury sustained through purely accidental means within the coverage of the insurance policy sued on, and nonsuit should have been entered.

JOHNSON, J., not sitting.

APPEAL by defendant from *Phillips, J.,* January Term, 1956, of DARE.

This was an action to recover on an accident insurance policy issued to Adrian C. Midgett. It was alleged that the death of the insured resulted from an accident within the terms of the policy.

It was admitted that the defendant issued its policy whereby it insured Adrian C. Midgett against loss of life "resulting directly and independently of all other causes from bodily injuries sustained during any term of this policy through purely accidental means."

The defendant also admitted the death of Adrian C. Midgett while the policy was in force and that plaintiff was the beneficiary named therein, but it alleged that the death of the insured resulted from an altercation with one Herman Lee Baldwin and was the result of his own aggression and hence did not result directly and independently of all other causes through purely accidental means. It was admitted that in the course of the altercation brought on by the wrongful conduct of the insured he was pushed back by Herman Lee Baldwin in the manner

and under the circumstances set forth in the deposition of Baldwin and that Midgett's head came in contact with a water meter, resulting in injuries from which he died ten days thereafter.

The only evidence offered by plaintiff, or in the trial, tending to show the circumstances under which the insured sustained the injury resulting in his death was the deposition of Herman Lee Baldwin. This witness testified as follows:

"I was sitting on the steps of the porch of my house, No. 721 Southampton Avenue in Norfolk, Va. It is on the south side of the street. There are four steps from the porch of my house to the sidewalk, five including the last one. The sidewalk in front of my house is not paved; it is dirt; on that sidewalk there is a metal water meter or cap; it is pretty good size, about the size of that wastepaper basket or a little larger; about six inches across; it was protruding above the ground and it was near the curb; the street itself was paved.

"On this Sunday morning I saw Mr. Adrian C. Midgett while I was sitting on the porch. I didn't know him at that time and had never seen him as I recall. I was sitting on the porch when he came up. He stopped in front of my house. Mr. Midgett came up and walked up to me and said, 'Can I speak to you?' I said, 'Yes, what is it?' I was sitting there with my hand on my jaw like this (indicating), and he said, 'Where can I get a woman and some whiskey?' He came from the direction of Colley Avenue. I pointed and said, 'Go back to the corner and turn to your right and you will probably find what you want up there.' I said, 'There is nobody living through here but colored people and I don't know anything about anything like that.' . . . He insisted.I knew. I told him, 'I am sorry, fellow, but you have got the wrong fellow. I don't know anything about anything like that.' I said, 'You wouldn't like it if a colored man come in a white section and asked you for a woman and whiskey.' . . . I said, 'White people live up there and colored people live in this section. You are in the wrong place.' From there he started cursing me, got vicious, and called me s.o.b.'s and started towards me. . . . He got up at least three steps. By my sitting down and him rushing to me I didn't know what he would do. When I got up he was in reach of me. The porch is narrow. It is a two-story apartment. The steps is wide because one section of steps goes downstairs and the other section goes upstairs. I was sitting up against the bannister on my side of the porch where I live. He came within reach of me. I really was in fear of bodily harm. He was still advancing on me. The door of my house was immediately back of me and was locked because when I come out and pulled the door to it automatically locks. When I stood up he was still advancing on me. That is the reason I stood up. When he got almost to me I just pushed him away from me. He was still advancing when I pushed him. I shoved him

back. He was on the steps and he fell backwards. . . . After I shoved him I got up and . . . went into the house. I just pushed him away from me and he had to go back because he was facing me. If a man is vicious enough to come on you like that you don't know what he is going to do so I knocked on the door and went upstairs. I didn't look back but I know he fell. He had to go backwards because he was coming towards me. He weighed over 200 pounds, was a settled man, I would call him, may have been in his early 40's or late 40's. He looked strong all right. That is why I was in a hurry to get away from him. He was larger than I am . . . When I shoved him back I was not doing anything other than to protect myself and my home. I had not said anything to him to provoke a fuss, nothing at all. I didn't curse him. That is one thing I don't do."

The witness Baldwin further testified: "Evidently he (the insured) was infuriated because he cursed me the way he did. . . . He didn't have his hands down to his side as he came towards me. He came as if he was going to grab me. He had his hands in front of him. . . . I don't know whether he was drinking or not. As he approached me I became scared he might strike me or inflict some bodily harm upon me. Because of that fear I pushed him back. . . . When he started up the steps he started cursing and continued cursing and he came up with his hands raised. . . . I went to Police Headquarters. I told them what had happened and I was acquitted."

The court overruled defendant's motion for judgment of nonsuit.

Upon issues submitted the jury returned verdict in favor of the plaintiff, and from judgment in accord therewith, the defendant appealed.

*Wallace R. Gray and McCown & McCown for plaintiff, appellee.*

*Jack W. Marer, R. C. Andrews, and Worth & Horner for defendant, appellant.*

Devin, J. The policy issued to Adrian C. Midgett by the defendant insured against loss of life resulting directly and independently of all other causes from bodily injuries sustained through purely accidental means. It was not controverted that the death of the insured resulted from an altercation with the witness Baldwin. From the testimony of this witness, who was the sole witness to the occurrence offered by the plaintiff, the conclusion seems inescapable that the insured was the aggressor; that he used the language of vituperation and fury and demonstrated an attempt to do violence to the person of the witness; that he advanced with arms raised up the steps of Baldwin's home in such a manner as to put Baldwin in fear, so much so that Baldwin was caused to push him away to protect himself and his home, and then to retreat within doors.

The policy sued on insured against loss of life resulting from bodily injuries sustained through accidental means. In *Fletcher v. Trust Co.*, 220 N.C. 148, 16 S.E. 2d 687, *Barnhill, J.*, drew the distinction between "accidental" and "accidental means" as these terms are used in accident insurance policies, and pointed out that the phrase "accidental means" refers to the occurrence or happening which produces the result rather than the result. *Scott v. Ins. Co.*, 208 N.C. 160, 179 S.E. 434; *Kirkley v. Ins. Co.*, 232 N.C. 292, 59 S.E. 2d 629; *Ocean Accident & Guarantee Corp. v. Glenn*, 165 Va. 283, 182 S.E. 221. See also Michie's Jurisprudence, Law of Virginia, Insurance Sec. 128; Vance on Insurance, 569.

Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury. 45 C.J.S. 779.

Where the insured is the aggressor in a personal encounter and commits an assault upon another with demonstration of violence and knows, or under the circumstances should reasonably anticipate, that he will be in danger of great bodily harm as the natural and probable consequence of his act or course of conduct, his injury or death may not be regarded as caused by accidental means. 45 C.J.S. 827.

Where the death of the insured results from an aggressive assault upon another, whether the loss is covered by the terms of the policy insuring against death through accidental means depends on whether the death was the natural and probable consequence of the insured's aggression, and what is the natural and probable consequence thereof depends on the character of the aggression and the circumstances attending. *Podesta v. Metropolitan Life Ins. Co.*, 150 S.W. 2d 596.

It was said by *Hoke, J.*, in *Clay v. Ins. Co.*, 174 N.C. 642, 94 S.E. 289, that "the true test of liability in cases of that character is whether the insured, being in the wrong, was the aggressor under circumstances that would render a homicide likely as result of his own misconduct." In that case the insured was killed by a pistol shot while engaged in an affray with another.

In *Ins. Co. v. Ryder*, 166 Va. 446, 185 S.E. 894, it was said: "One who assaults another or voluntarily enters into an affray and is hurt has not suffered an accident."

Applying these principles of law to the uncontradicted evidence in this case, we conclude that the death of the insured Adrian C. Midgett did not result from bodily injuries sustained through purely accidental means, and hence was not covered by the policy of insurance sued on.

We have considered the authorities cited by counsel for the appellee in their brief and the arguments they advance that the death of the insured in the manner described by the witness was not the natural and probable consequence of the conduct of the insured, but we think the character and the extent of the insured's aggression under the circumstances herein fully set out are such as to exclude the concept of death by accidental means within the meaning of the policy.

The defendant's motion for judgment of nonsuit, aptly interposed, should have been allowed.

The judgment of the Superior Court is
Reversed.

JOHNSON, J., not sitting.