**Sallie Millard NEWTON, Plaintiff,**

v.

**COLONIAL LIFE & ACCIDENT INSUR-
ANCE COMPANY, Defendant.**

**Civ. No. 371.**

United States District Court
E. D. North Carolina,
Washington Division.

Jan. 21, 1957.

James & Speight, Greenville, N. C., for
plaintiff.

Battle, Winslow & Merrell, Rocky
Mount, N. C., McKay, McKay, Black &
Walter, Columbia, S. C., for defendant.

GILLIAM, District Judge.

The plaintiff, as beneficiary under a
certificate issued to her husband, Lin-
wood Newton, an employee of Pitt and
Green Electric Membership Corporation,
has sued the defendant, alleging Linwood
Newton's death under circumstances
which, as she claims, constitute liability
under the coverage of the policy. The
death and the fact that the certificate
was in force at the date of death, are ad-
mitted. The whole question involved is
whether the contract of the certificate
covered the death so as to create liability.
The certificate was issued under an "Em-
ployees' Group" policy which also was in
force at the date of the death. There is
some variance between the wording of
the master policy and the certificate is-
sued thereunder to Linwood Newton, the
employee, though this variance may not
be critical.

The certificate inter alia provides as
follows:

Part A: "The Company will pay the
benefits named in this policy for loss re-
sulting from bodily injuries sustained
in the following manner: 1. While rid-
ing in * * * an automobile * * *"

Part B: "If injuries as described in
Part A are sustained * * * and result
within ninety (90) days from date of
accident and directly and independently
of all other causes in the loss named in
this Part, the Company will pay * * *
For loss of life, $5,000." But it also
provides that it is issued subject to "all
the terms, provisions, and conditions of
the policy". This reference, to my mind,
is clearly to the master policy and I con-
clude that the provisions in the master
policy become a part of the contract be-
tween the insurer and the insured.

Reference to the master policy dis-
closes these provisions: (Page 1) "(De-
fendant) in consideration of the applica-
tion of the Employer for this policy
* * * hereby insures, subject to the
terms and conditions of this policy, each

of those employees designated below, against loss resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external and accidental means * * *" (Page 2) Part A: "The Company will pay the benefits named in this policy for loss resulting from bodily injuries sustained in the following manner:

"1. While riding in * * * an automobile * * *" (Page 2) Part B: "indemnities for accidental death * * * if injuries (as set out above) are sustained * * * and result within ninety (90) days from date of accident and directly and independently of all other causes in the loss named in this Part, the Company will pay to the beneficiary of such employee the amount set opposite such loss which shall include amounts payable under succeeding parts: For loss of life * * * $5,000."

■ The facts support the claim in every respect unless it fails to appear from the evidence that the death did result "directly and exclusively of all other causes from bodily injuries effected solely through external and accidental means". The burden rests upon the plaintiff to prove the affirmative of the issue and North Carolina law controls.

The Court finds these facts leading to and surrounding the death of Linwood Newton. He was arrested by a Highway Patrolman while driving an automobile on a State highway and found to be intoxicated; thereupon, he was put under arrest by the patrolman who put him forcibly into his own car for the purpose of confining him in jail until he "sobered up" and thereafter executed bond to appear for trial; on the way to jail Newton, seated by the patrolman on the front seat of the patrol car, suddenly and savagely attacked the patrolman and took his gun from him; in the struggle the patrolman was able to get his hand on the gun but was unable to free himself from Newton's hold around his neck; in this situation, with his hand on the gun at close range to Newton's body and un-

able to break his hold fired the pistol, causing Newton's death; the plaintiff's version that the patrolman first assaulted Newton is rejected; Newton was the aggressor and in view of all the evidence the patrolman was justified in taking his life.

There are many cases dealing with the question, both in this jurisdiction and others, but it seems worthwhile only to quote from the case of Scarborough v. World Insurance Company, 244 N.C. 502, 94 S.E.2d 558, 559, where the applicable and controlling principle is clearly announced. The pertinent facts in that case were these: one Midgett went to the home of one Baldwin in a colored section of Norfolk, Virginia; Baldwin was seated on his front porch with his feet resting on the top step of the steps leading up to the front porch; Midgett asked Baldwin where he could find some whiskey and a woman; Baldwin directed him to another section and in the course of some further conversation said: " "You wouldn't like it if a colored man came in a white section and asked you for a woman and whiskey." '" At this point Midgett started cursing, got vicious, called Baldwin a vile name, and started up the steps toward him; when he reached the third step Baldwin pushed him backward; when he fell his head struck a water meter, causing injuries from which he died. The provisions in the involved policy there were substantially identical with those in the involved policy here. The Court by unanimous opinion held that the death was not accidental within the meaning of the policy. In support of the holding the Court cites with approval from C.J.S., "Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result

may be such as to constitute an accidental injury. 45 C.J.S., Insurance, § 753, p. 779.

"Where the insured is the aggressor in a personal encounter and commits an assault upon another with demonstration of violence and knows, or under the circumstances should reasonably anticipate, that he will be in danger of great bodily harm as the natural and probable consequence of his act or course of conduct, his injury or death may not be regarded as caused by accidental means. 45 C.J.S., Insurance, § 788, p. 827."

Plaintiff finds no fault with the application of the principles set out in the Scarborough case, but asserts that the Court on the evidence should not find as a fact that the insured knew or should have reasonably anticipated that he would be in danger of great bodily harm as the natural and probable consequence of his course of conduct, thereby saving plaintiff's right to recover upon the theory that insured's death was unforeseen and unexpected and, therefore, accidental and resulted from "bodily injuries effected solely through external and accidental means."

The authorities cited by plaintiff, as well as the Scarborough case, support the view that even where it appears the insured is the aggressor in an altercation, his ensuing death may be held as accidental, provided it also appears the insured was in such mental condition that he could not reasonably anticipate he would be in danger of great bodily harm as a probable consequence of his acts. But I find strong reason to believe and find that the insured here did anticipate or certainly should have anticipated that serious bodily harm to him would probably result from his savage and unjustified assault upon the officer.

Plaintiff insists that the evidence shows the insured was so drunk he was mentally unbalanced and relies largely on the evidence of the officer. This statement was made to him on cross examination: "He was so intoxicated, according to your opinion, that he was completely out of control, mentally unbalanced?" Whereupon, the officer stated: "He was in mighty bad shape". I do not accept this as the expression of an opinion that Newton was mentally unbalanced or that he did not fully realize what he was doing and that serious bodily harm to himself might result. He was arresting Newton for driving drunk. Upon that score "he was in mighty bad shape". The evidence shows, in my opinion, that he was not mentally deranged, but just intoxicated and determined that the officer should not take him to jail. He asked the officer just after his arrest who was going to look after his (Newton's) car; he also stated that he wasn't going to lose his operator's license. What he did was unwise and it may be that he would not have acted as he did had he consumed less drink, but it is plain that he knew what he was doing and calculated the risk he was taking in undertaking to evade arrest. I agree with comment of defendant's counsel that had Newton killed the officer he would have been guilty of an unlawful homicide.

The plaintiff's counsel cite only one case which, to my way of thinking, seems to support their position, that is, American Nat. Ins. Co. v. Nelson, 69 Ga.App. 537, 26 S.E.2d 203, 205. They quote from the opinion of Judge Stephens as follows: "Under this rule [referring to earlier Georgia cases] where the insured is the aggressor, and at the time is under the influence of intoxicating liquor, or is drunk, he can not as a matter of law be held for the same standard in anticipating bodily injury from the other person who killed him as he would be were he sober." Recovery was allowed. The facts of that case are not given and are not available to me. Ordinarily, isolated statements taken from an opinion, considered without reference to the facts prompting them, are of little value, but if the case is authority for the position that mere drunkenness accompanied by disposition to violence takes the case from the general rule set out in the Scarborough case, I will not follow it. It is

not the law in this jurisdiction. The deceased here, however drunk, had vastly more reason to anticipate the result than did the deceased in that case. Newton's death was not an accidental one nor were the fatal injuries "effected solely through external and accidental means" within the terms of the policy and the certificate issued thereunder. So there can be no recovery.

Accordingly, it is adjudged that plaintiff recover nothing and pay the costs of the action.