EARL ALLRED v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

(Filed 6 November, 1957)

1. **Insurance § 38—**

> In order to recover on a double indemnity clause in a policy of life insurance for death effected through external, violent and accidental means, death of insured must not only be accidental but must be produced by accidental means, and if death, although unexpected, flows from an ordinary act in which insured voluntarily engages, such death is not deemed to have been produced by accidental means.

2. **Same—**

> Evidence tending to show that insured's death resulted from being struck by an automobile after he had voluntarily lain prone in the center of the highway, discloses that the death flowed directly from the voluntary act of insured, and therefore nonsuit is proper in an action under the double indemnity clause of a policy predicated upon the death of insured by accidental means.

> Johnson and Bobbitt, JJ., dissent.

APPEAL by plaintiff from *Armstrong, J.,* at May 6, 1957 Civil Term, of FORSYTH.

Civil action, under Small Claims Act, to recover face amount of policy of life insurance, plus like amount for accidental death within meaning of policy; and there was no jury.

These facts appear to be uncontroverted:

1. The defendant Prudential Insurance Company of America, on 16 February, 1953, issued its life insurance policy No. M50 990 111, insuring the life of John L. Allred, in the sum of $500, and an additional sum of $500 should the death of insured occur as a result, "directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means * * * The aforesaid injuries must be evidenced by a visible contusion or wound on the exterior of the body * * *," and named therein as beneficiary the plaintiff Earl Allred.

2. On 25 August, 1956, the insured, John L. Allred, died as the result of physical contusions and wounds on the exterior of his body, after being struck by an automobile. Said policy of insurance was then in force and effect, and due notice of the death was given, and the deceased, John L. Allred, was more than five years of age at the time of his death.

3. Plaintiff has made demand upon the defendant for the payment of $1000 under said policy contract, and defendant has refused to pay said amount. However, defendant admits that it is indebted to plaintiff for the face amount of said policy, $500, plus $5.50 paid-up additions, and has tendered its check in amount of $505.50 to plaintiff, and plaintiff has refused to accept said amount in settlement of his alleged claim.

Defendant further answering the complaint of the plaintiff, avers:

(a) That the policy of insurance which is described in the complaint contains a provision for an accidental means death benefit after age 5, as limited and defined in said policy, the pertinent portions being as quoted in paragraph 1 herein above recited.

(b) "That with respect to the plaintiff's claim for recovery of the accidental means death benefit under said policy of insurance, the defendant avers that no proof has been given the defendant that the death of the insured was under such circumstances as to bring his death within the coverage of the aforesaid provisions for accidental means death benefits, and the defendant specifically denies that the death of the insured was the result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means. On the contrary, the insured was killed in the performance of a voluntary act so obviously dangerous as naturally to result in loss of life. The defendant is informed and believes and upon information and belief alleges that the insured just prior to his death, late at night, while accompanied by two companions, was walking along a traveled highway, being Rural

Hall Road in Forsyth County; that the insured voluntarily went out into the middle of the highway and laid himself down in the middle of the road; that the insured was warned by one of his companions that he had better watch out or he would get killed; that notwithstanding said warning and an approaching automobile, he laid down lengthwise on the white center line in the highway and was struck by the automobile and killed.

Upon trial in Superior Court the plaintiff offered evidence tending to show in substance the following: John L. Allred was born 15 August, 1942. He was the adopted son of plaintiff and lived with him since early infancy. Plaintiff saw him about 9 o'clock on the evening of 24 August at a shopping center west of the city of Winston-Salem. He was with two boys, Cofer and Crosby, and three other companions,—all together. At around 11:15 that night John called plaintiff to ask, and was granted, permission to "stay over-night" at the home of the Cofer boy.

And the Cofer boy, 15 years of age, as witness for plaintiff, gave this narrative, quoting: "I saw John L. Allred on August 25th. I first got up with him at the Thruway Shopping Center, at the Ray Burke dance. He and I attended the dance. I left the dance in the company of John L. Allred, Steve Crosby, and Chester Locklear * * * From the dance we went to Lexington Barbecue * * * located north of Winston-Salem, on Highway 52, a mile or maybe two miles out of the city * * * We got to Lexington Barbecue at about 11:15 p.m. * * * We stayed there until about 11:30. We left there going to my home, riding with Mr. Hill, the man that runs Lexington Barbecue * * * We went to the Winston-Salem Drive-In Theatre on N. Cherry Street Extension * * * a drive-in picture theatre. We stayed there about twenty minutes. We did not attend the show. From the drive-in we went back to the Duplan bus stop. We stayed at the bus stop about thirty minutes. It was around 1 a.m. of August 25th then. When we left there we started thumbing. We got a ride with a guy who took us out to the old Rural Hall Road, near the place the Highway patrolman and the Sheriff described on the witness stand, on Highway 52, between Winston-Salem and Rural Hall. I don't know what time it was when we got there. I guess it was around 2:00, 2:30, or maybe longer than that. At that time John L. Allred and Steve Crosby were with me. John L. Allred called his father that night from Lexington Barbecue * * * John was to spend the night with me that night.

"After we got to this point on the highway, we stood there and talked a good while. John said something about going out in the middle of the road and just laying down, and he laid out in the middle of the road * * * He said, 'I'm going to go out

ALLRED *v.* INSURANCE CO.

there and lay out in the road and show you all how brave I am' * * * just kidding. I didn't think he was going to lay out there * * * He did lay down on the road * * * in the middle * * * with his head up toward Rural Hall and his feet toward Winston-Salem. He laid right in the white line, with his head on the white line * * * and toward Rural Hall. Steve and I walked across the road * * * toward Rural Hall. We seen a car coming. I told Johnny to get up, he might get killed. At that time I was about three feet, maybe four or five feet, not too far away, from Johnny. Johnny did not answer me back; he kind of laughed * * * I had seen a car approaching from direction of Rural Hall. When I made that statement the car was about 100 yards up the road, and it was 'moving', it was going about 80 miles an hour. When the car approached him, Johnny just laid there, and it run over him * * * I was about ten or fifteen yards away at the time * * * When it passed, the car was in the middle of the road * * * I called the officers * * * I did not notice any signs of life after he was hit."

Then on cross-examination the Cofer boy continued: "I thought the car * * * was a '50 Nash, brown * * * It wasn't making no loud noise or no small noise either one. I would describe it as the noise you would normally expect an automobile to make driving at 80 miles an hour down the road * * *."

And, again, "There had been another occasion, prior to that time" Cofer testified, "on which John got in the highway in front of an approaching vehicle. At that time he stood out there when a truck came by, and made a sign for him to blow his horn * * * and he jumped back when the truck got close to him."

On re-direct examination the witness Cofer continued, saying: "There had been other occasions when we boys had been out in the highway. We had laid down in the highway * * * On these other occasions when we'd see a car coming, we'd get up."

And the witness Cofer testified that "the deceased had not been drinking anything intoxicating."

Plaintiff offered testimony of other witnesses in respect to the scene of the death of John L. Allred, and of the injuries apparent upon his body, which, in the Coroner's opinion, produced death.

At the scene the highway ran north and south. It was 24 feet wide, and to the north it was straight, as variously estimated, for nine-tenths of a mile, or six to eight hundred yards; and to the south there was a slight curve to the south. The night was

clear. There was nothing to obstruct the vision of one driving southwardly to the scene. And the automobile has not been located.

The cause having been heard before the Judge presiding, without a jury, pursuant to the Small Claims jurisdiction of Superior Court, and the parties by their counsel having stipulated the liability of defendant to the extent admitted in defendant's answer, and the only issue for determination is the question whether defendant is liable for "double indemnity," or accidental death benefit, pursuant to the terms of the policy; and the court having heard the evidence introduced by plaintiff, and defendant having moved at the close of plaintiff's evidence for dismissal and judgment of nonsuit, and demurred to the evidence, relating to plaintiff's claim for accidental death benefit, without prejudice to the right of plaintiff to recover the admitted amount due as stated in defendant's answer; and the court being of opinion that the evidence of plaintiff is insufficient to sustain a cause of action for accidental death benefit as defined by the policy, and that, therefore, defendant's motion should be allowed, the court ordered, adjudged and decreed that plaintiff have and recover the admitted amount, and that plaintiff's cause of action as to accidental death benefit be and the same was dismissed, and that plaintiff have and recover nothing further.

To the signing of this judgment plaintiff objects and excepts, and appeals to Supreme Court and assigns error.

*Buford T. Henderson for plaintiff appellant.*
*Wharton & Wharton for defendant appellee.*

WINBORNE, C. J.: In the light of the evidence offered upon trial in Superior Court, taken most favorably to plaintiff, and giving to him the benefit of every reasonable inference, did the death of the insured result, directly and independently of all other causes, of bodily injuries effected through external, violent and accidental means, within the meaning of the accidental means death benefit provision contained in the policy of insurance in suit? Principles applied in decisions of this Court dictate a negative answer. See *Clay v. Ins. Co.,* 174 N.C. 642, 94 S.E. 289; *Mehaffey v. Ins. Co.,* 205 N.C. 701, 172 S.E. 331; *Fletcher v. Trust Co.,* 220 N.C. 148, 16 S.E. 2d, 687; *Scarborough v. Ins. Co.,* 244 N.C. 502, 94 S.E. 2d, 558, and cases cited.

In the Mehaffey case, *supra,* opinion by Brogden, J., the Court, in treating of liability clause of a policy of insurance resting upon death or injury "solely through external, violent and accidental means," declared that "in order to warrant recovery for

death in such event, such death must not only be accidental but must be produced by 'accidental means'." Then after citing and referring to cited cases, the Court concluded that "upon conditions of these authorities and others of like import, it seems that 'accidental means' implies 'means' producing a result, which is not the natural and probable consequence of such means. If the result, although unexpected, flows directly from an ordinary act in which the insured voluntarily engages, then such is not deemed to have been produced by accidental means."

In the Fletcher case, *supra*, Barnhill, J., later C. J., drew distinction between "accidental" and "accidental means" as these terms are used in accident insurance policies, and pointed out that the term "accidental means" refers to the occurrence or happening which produced the result, rather than the result.

And in the Scarborough case, *supra*, after referring to the Fletcher case, it is said "Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury."

The principle is approved and applied in *Thompson v. Prudential Ins. Co. of America*, 84 Ga. App. 214, 66 S.E. 2d, 119, and in *Baker v. The National Life & Accident Ins. Co.* (Tenn.), 298 S.W. 2d, 715, where factual situations are comparable to that in case in hand.

In the Thompson case the insured was killed while engaged in game of Russian Roulette. And the opinion of the Court is epitomized in these headnotes: "1. Under life policies containing provisions for double indemnity for death caused by accidental means, death which is the natural and probable consequence of an act or course of action is not an accident nor is it produced by accidental means, and, if not the result of actual design, insured must be held to have intended the result.

"2. Where insured engaged in game of 'Russian Roulette' and removed all but one cartridge from revolver cylinder, spun cylinder, and without ascertaining position of cartridge, placed revolver to head, pulled trigger and was killed, death was not caused by 'accidental means', within double indemnity provisions of life policies.

"3. In action by beneficiary for double indemnity under life policies providing for such payment for death caused by accidental means, evidence on issue of whether insured, who had

killed himself while playing 'Russian Roulette' with loaded revolver, was killed by accidental means was insufficient to take case to jury."

And in the Baker case, *supra,* (of "William Tell" import), these headnotes portray opinion of Supreme Court of Tennessee: "1. Where insured placed a pepper can on his head and invited friend to fire at the can with a revolver and insured moved his head just as revolver was fired with bullet entering insured's head causing his death, insured should have reasonably foreseen that death or injury might result and his death was not through 'accidental means' within double indemnity provisions of life policy.

"2. Death is not caused by accidental means if it is the natural and foreseeable result of a voluntary, though unusual and unnecessary act or course of conduct of the insured."

Applying these principles to case in hand, this Court is constrained to hold that the facts and circumstances shown by the undisputed evidence disclose that the death of the insured was "the natural and probable consequence of an ordinary act in which he voluntarily engaged." *Mehaffey v. Ins. Co., supra.*

Cases relied upon by appellant are distinguishable.

Hence no recovery can be sustained, and the judgment as of nonsuit must be

Affirmed.

JOHNSON and BOBBITT, J.J., dissent.