ADDIE LANGLEY v. DURHAM LIFE INSURANCE COMPANY OF
RALEIGH, N. C.

(Filed 18 March 1964.)

**1. Appeal and Error § 51—**

On appeal from judgment as of nonsuit, the Supreme Court must consider
all the evidence admitted in the court below, even though some of it may
have been incompetent.

**2. Insurance § 34—**

There is a difference between "accidental death" and "death by external,
violent and accidental means" within the coverage of a policy of insurance,
and death by external, violent and accidental means imports not only that
the means which caused the death were external and violent but that they
were also accidental, and if death results from a voluntary act it is not the
result of accidental means.

**3. Same—**

Evidence tending to show that insured was found, lying face down on
his bed some six to ten hours after death, his face buried, but not entangled,
in the bed covers, and his nose, lips and entire face flat, *is held* insufficient to
show that death resulted from external, violent and accidental means within
the coverage of a policy of insurance, since even assuming that the death re-
sulted from suffocation, the evidence raises the inference that insured volun-
tarily laid down on his bed and that the death resulted from his voluntary
act in so doing.

APPEAL by defendant from *Bundy, J.,* October 21, 1963, Civil Session of
PITT.

Plaintiff is named as beneficiary in each of two policies issued by de-
fendant. The same person is the insured in each policy. The insured died
March 5, 1961. The policies were in full force and effect. Each policy
provided defendant would pay to the beneficiary $2,400.00 if the in-
sured "shall sustain bodily injury effected directly through external,
violent and accidental means, exclusively and independently of all
other causes, which shall, within ninety days of the event causing the
bodily injury, result in the death of the Insured." Whether the insured's
death was the result of bodily injury so effected was the only issue
raised by the pleadings.

Plaintiff offered evidence consisting of the policies, the testimony of
E. Withers Harvey, Jr., Coroner of Pitt County, and a death certificate
signed by Harvey.

Harvey testified: "On March 6, 1961, I, as Coroner, was called upon
to investigate the death of one Charlie Langley, also known as Charlie
Ebram. I went to 1117 Douglas Avenue, Greenville, at approximately
5:45 a.m., and proceeded to the back bedroom of the house at this
address. I found a man lying on a bed, crossways, and by crossways I

mean not straight in the bed but his head and feet from one corner diagonally to the other, face down, dressed, with his head—with his face buried in the bed covers, which had not been turned back, lying flat on his face. This person was dead. I found that his face, his nose, lips, and his entire face was flattened, was mashed in and flattened."

After hearing evidence in the absence of the jury, the court held Harvey to be "an expert." Defendant excepted. Thereafter, over defendant's objections, Harvey was permitted to testify: (1) that, in his opinion, insured had been dead from six to ten hours; (2) that his opinion was based on "the condition of the body," that rigor mortis had set in and that, according to his best information, rigor mortis "will set in on a dead body during a period of from five to ten or eleven hours, based upon the temperature of the immediate surroundings"; and (3) that, in his opinion, the cause of death was suffocation. The death certificate was admitted only as it might tend to corroborate Harvey's (opinion) testimony that suffocation was the cause of death. On cross-examination, Harvey testified he did not know whether the insured died as a result of a heart attack or whether he had a stroke and that "there could be many, many reasons for his death."

Defendant offered one witness, Dr. E. B. Aycock, admitted by plaintiff to be "a medical expert in the general practice of medicine." Plaintiff's objections to hypothetical questions asked Dr. Aycock were sustained. Defendant excepted.

The court submitted and the jury answered the following issue: "Did the insured Charlie E. Langley (Charlie Ebram), under Policies A 25329 and A 52862, sustain bodily injury effected directly through external, violent and accidental means, exclusively and independently of all other causes, thereby resulting in the death of the insured? Answer: Yes."

Judgment that plaintiff have and recover of defendant the sum of $4,800.00 and costs was entered. Defendant excepted and appealed.

*Richard Powell and Charles H. Whedbee for plaintiff appellee.*
*L. W. Gaylord, Jr., for defendant appellant.*

BOBBITT, J. Defendant assigns as error the denial of its timely motion(s) for judgment of nonsuit. In passing upon this assignment, the admitted opinion testimony of Harvey, whether competent or incompetent, must be considered. *Early v. Eley,* 243 N.C. 695, 700, 91 S.E. 2d 919, and cases cited; *Kientz v. Carlton,* 245 N.C. 236, 246, 96 S.E. 2d 14.

"Where . . . a policy provides for indemnity for injuries inflicted by external, violent, 'and' accidental means, to support a recovery it must

be shown not only that the means were external and violent, but also that they were accidental—that is, all three tests must be met before coverage is afforded." 29A Am. Jur., Insurance § 1165; 45 C.J.S., Insurance § 754; 1 Appleman, Insurance Law and Practice, § 393. Plaintiff, to establish coverage, must show the insured's death was effected "directly through external, violent and accidental means, exclusively and independently of all other causes." *Fallins v. Insurance Co.,* 247 N.C. 72, 100 S.E. 2d 214; *Slaughter v. Insurance Co.,* 250 N.C. 265, 108 S.E. 2d 438; 21 Appleman, *op. cit.,* § 12482.

While there is a division of authority elsewhere (see 29A Am. Jur., Insurance § 1166 and Comment Note, 166 A.L.R. 469), this Court has consistently drawn a distinction between the terms "accidental death" and "death by external accidental means." *Fletcher v. Trust Co.,* 220 N.C. 148, 16 S.E. 2d 687, and cases cited. For later cases, see Strong, N. C. Index, Insurance § 34.

In *Fletcher,* Barnhill, J. (later C.J.), said: " 'Accidental means' refers to the occurrence or happening which produces the result and not to the result. That is, 'accidental' is descriptive of the term 'means.' The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected. Under the majority view the emphasis is upon the accidental character of the causation—not upon the accidental nature of the ultimate sequence of the chain of causation. The insurance is not against an accidental result. To create liability it must be made to appear that the unforeseen and unexpected result was produced by accidental means."

In *Fletcher,* a spinal anesthetic was administered. The respiratory system became completely paralyzed or anesthetized and the patient (insured) died. The injection of the anesthetic was intentional and authorized. This Court held the death (although accidental) was not caused by accidental means.

In *Scott v. Insurance Co.,* 208 N.C. 160, 179 S.E. 434, the extraction of the insured's tooth "was intentional, skillfully done in the ordinary and usual manner, with no mishap, unforeseen element, or mis-adventure." However, an infection set in which produced an embolus which caused insured's death. This Court held the evidence insufficient to show death was caused by accidental means.

In *Mehaffey v. Insurance Co.,* 205 N.C. 701, 705, 172 S.E. 331, Brogden, J., states: "If the result, although unexpected, flows directly from an ordinary act in which the insured voluntarily engages, then such is not deemed to have been produced by accidental means." This statement is quoted with approval by Winbourne, C.J., in *Allred v. Insurance Co.,* 247 N.C. 105, 100 S.E. 2d 226.

In *Allred,* plaintiff's evidence tended to show insured's death resulted from being struck by an automobile after he had voluntarily laid prone in the center of the highway. It was held the evidence disclosed insured's death flowed directly from his own voluntary act and was not caused by accidental means. Judgment of nonsuit was affirmed.

In Webster's Third New International Dictionary (unabridged), suffocation is defined as follows: "the act of suffocating or state of being suffocated: stoppage of breathing." It is also stated: "SUFFOCATE commonly refers to conditions in which breathing is impossible through lack of available oxygen or through presence of noxious or poisonous gas (prisoners *suffocated* in the underground dungeon)" and "SUFFOCATE also refers to situations in which breathing is impossible because mouth and nose are covered (*suffocating* under the mud and earth which had fallen over his head)."

According to Harvey's opinion testimony, suffocation, "stoppage of breathing," caused insured's death. If so, the question is whether there was evidence sufficient to support a finding that suffocation was caused "through external, violent and accidental means."

There was no evidence tending to show: (1) the presence of noxious or poisonous gas; (2) the insufficiency of available oxygen; (3) bruises or other bodily injury; (4) when and under what circumstances insured lay down on his bed; (5) insured's physical condition prior to and at the time he lay down on his bed.

The evidence tends to show: When observed, some six to ten hours after death, insured was lying flat on his face, his face buried in the bed covers. Rigor mortis ("rigidity of muscles after death," Webster, *op. cit.*) had "set in." At that time, insured's "nose, lips, and his entire face was flattened, was mashed in and flattened."

There was no evidence to support plaintiff's allegation that insured became "entangled in the bed covers" while asleep. Indeed, the evidence contradicts this allegation.

It is noted that plaintiff alleged insured, shortly after arriving at his home on March 5, 1961, about 5:30 p.m., "went to his bedroom and laid across the bed and went to sleep."

In our view, the only reasonable inference to be drawn from plaintiff's evidence is that insured voluntarily laid down on his own bed. When Harvey observed the body of insured, insured was lying on the bed, diagonally, on top of the bed covers. Assuming death by suffocation caused in whole or in part from contact with the bed covers, this was the unintended and unexpected result of insured's voluntary act. In our opinion, the admitted evidence was insufficient to show that death by suffocation was caused by accidental means.

For the reasons stated, defendant's motion(s) for judgment of non-suit should have been allowed. Hence, the judgment of the court below is reversed.

Reversed.