HELEN E. SAWYER v. LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE.

(Filed 20 September, 1967.)

**1. Trial § 21—**

On motion to nonsuit, the plaintiff's evidence is to be taken as true and considered in the light most favorable to him, giving him the benefit of every fact and inference of fact in his favor which may be reasonably deduced from the evidence, and defendant's evidence which tends to impeach or contradict plaintiff's evidence is not considered.

**2. Insurance § 34— Evidence held not to show insured provoked felonious assault as matter of law and therefore was sufficient to be submitted to jury in action on accident policy.**

Plaintiff's evidence was to the effect that insured and his mother went to the home of his wife's parents after his wife had left him, that he and his mother-in-law became engaged in an altercation, she ordering him from the house, that he hit her and that she called her son who came into the room and stabbed him with a knife, inflicting fatal injury. *Held:* Even though insured was the aggressor in a simple assault, the circumstances were not such as to charge him with anticipating the felonious assault and therefore nonsuit was properly denied in plaintiff's action to recover under the provisions of the policy for benefits if insured died as a result of violent, external and accidental means.

APPEAL by defendant from *Bone, E.J.,* February 1967 Session of BEAUFORT.

Civil action by beneficiary to recover death benefits on accident insurance policy No. 20841058 issued by defendant insuring the life of James F. Sawyer.

Defendant's pleadings admit that plaintiff was the beneficiary named in said policy and that the policy was in full force and effect on the date of James F. Sawyer's death. The pleadings also admit that plaintiff filed proof of loss with defendant.

Policy No. 20841058 insured James F. Sawyer against loss of life

by "drowning or bodily injury effected solely through violent, external and accidental means, . . ."

The plaintiff and beneficiary under the accident insurance policy, Mrs. Helen E. Sawyer, was the mother of the insured, James F. Sawyer. Evidence introduced by plaintiff tends to show the following:

James F. Sawyer went to the home of Mrs. Sawyer about 6:30 in the evening of September 15, 1965. Mrs. Sawyer accompanied James to his trailer, where he lived with his wife, Dorothy Leggett Sawyer, and their son. It appeared that his wife had left with her belongings and their child. From there, James Sawyer rode with his mother to the home of Mrs. Betty Leggett, mother of his wife, in an effort to find his wife and talk with her.

James Sawyer was *admitted* by the rear door into Mrs. Leggett's home. Mrs. Sawyer testified that about three minutes later she heard Mrs. Leggett shout, "Get out of my house! Get out of my house!" Upon entering the house she saw James standing near the back door. Mrs. Leggett and her son, Leonard Eugene Leggett, were "beating" James. She did not see James strike anyone. He was trying to get out, but they were holding and pushing him when he got to the door. She said: "He could not get out like magic." She told James to turn Mrs. Leggett loose and to leave, which he did. After leaving the house, James said, "Mama, I have got to go somewhere. That boy has stuck a knife in me." She took James to the hospital, where he was treated by Dr. Sam Williams. He remained in the hospital until his death on October 2, 1965.

Dr. Sam Williams, who was admitted to be a medical expert specializing in surgery, testified that James Sawyer had been stabbed in the lower right abdomen, in the right groin. The death certificate listed bronchial pneumonia secondary to stab wound in the right groin as the cause of death. Dr. Williams stated that in his opinion the pneumonia was secondary to the stab wound and due to the disability of his injury and that the complications were from his stab wound.

At the conclusion of plaintiff's evidence, defendant moved for judgment as of nonsuit, which motion was denied.

Mrs. Betty Leggett, testifying for defendant, stated, in part, that after she ordered James Sawyer to leave her house, she then took him by the arm in order to show him out. She further said that James hit her on the face and on the arm and that she did not strike him, that she could handle James because he had never given her any trouble, but when Mrs. Sawyer came into the house she then called her son Leonard to her aid.

Defendant's witness Leonard Eugene Leggett testified, in sub-

stance, that James Sawyer was about at the arch between the living room and the kitchen when he first came out of the bathroom; that Mrs. Leggett had worked James over to the door leading to the outside from the kitchen; that James struck Mrs. Leggett and then struck him, whereupon he picked up a knife from the table and stabbed James. Mrs. Leggett still had hold of James when he stabbed him. James immediately left the house. Leonard Leggett further testified that he did not see anything in James' hand.

Mrs. Dorothy Sawyer, also testifying for defendant, said, *inter alia*, that she saw James Sawyer hit her mother one time but did not see him strike any other blow.

At the close of all the evidence, defendant renewed its motion for judgment as of nonsuit. The motion was denied.

Defendant requested the court to charge the jury as follows:

"If you believe the evidence and find the facts to be as all the evidence tends to show, you will answer the first issue No."

The court refused defendant's request and defendant excepted.

The jury returned a verdict in favor of plaintiff. Defendant appealed.

*Carter & Ross for plaintiff.*
*Rodman and Rodman for defendant.*

BRANCH, J. Appellant's assignments of error as to denial of motions for nonsuit and denial of its request for peremptory instruction challenge the sufficiency of the evidence to go to the jury.

Appellant contends that the death of insured resulted directly from insured's voluntary act and aggressive misconduct and therefore did not come within the policy provision of death resulting from "bodily injury effected solely through violent, external and accidental means."

In the case of *Fallins v. Insurance Co.*, 247 N.C. 72, 100 S.E. 2d 214, the Court, considering an insurance policy which insured deceased against death by external, violent and accidental means, and speaking through Higgins, J., stated:

"An injury is 'effected by accidental means' if in the line of proximate causation the act, event, or condition from the standpoint of the insured person is unintended, unexpected, unusual, or unknown. The unintended acts of the insured are deemed accidental. Injuries caused to the insured by the acts of another person, without the consent of the insured, are held due to accidental means unless the injurious acts are provoked and should

have been expected by the insured. (Citing numerous authorities)."

Appellant relies heavily on *Scarborough v. Insurance Company*, 244 N.C. 502, 94 S.E. 2d 558, and points with particularity to that portion of the opinion which states:

"Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury.

"Where the insured is the aggressor in a personal encounter and commits an assault upon another with demonstration of violence and knows, or under the circumstances should reasonably anticipate, that he will be in danger of great bodily harm as the natural and probable consequence of his act or course of conduct, his injury or death may not be regarded as caused by accidental means."

This Court quoted with approval the above language from *Scarborough* in the recent case of *Mills v. Insurance Company*, 261 N.C. 546, 135 S.E. 2d 586, and further stated:

". . . This excerpt from the opinion of Hoke, J. (Later C.J.), in *Clay* is quoted with approval in *Scarborough* and in *Gray*: '. . . in case of death by "external, violent and accidental means," without more, we hold that the true test of liability in cases of this character is whether the insured, being in the wrong, was the aggressor, under circumstances that would render a homicide likely as a result of his own misconduct.'"

See also *Clay v. Insurance Co.*, 174 N.C. 642, 94 S.E. 289.

It is well established in this jurisdiction that upon motion to nonsuit the plaintiff's evidence is taken as true and considered in the light most favorable to him, giving him the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence, and defendant's evidence which tends to impeach or contradict plaintiff's evidence is not considered. *Green v. Meredith*, 264 N.C. 178, 141 S.E. 2d 287.

Applying these recognized rules of law to the instant case, we hold that plaintiff's evidence is sufficient for the jury to infer that the insured was not the aggressor and in the wrong under such cir-

cumstances as would render his injury and resulting death the natural and probable consequences of his conduct. The trial judge. properly overruled defendant's motion for judgment as of nonsuit.

Nor does the uncontradicted evidence establish facts precluding recovery so as to allow the court to give a peremptory instruction against defendant. *Wesley v. Lea,* 252 N.C. 540, 114 S.E. 2d 350.

No error.