**Hilda Taylor AYERS, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**Civil Action No. 96–0023–D.**

United States District Court, W.D. Virginia, Danville Division.

Dec. 11, 1996.

---

Philip G. Gardner, Gardner, Gardner & Barrow, Martinsville, VA, for plaintiff.

Robert Barnes Delano, Jr., Sands, Anderson, Marks & Miller, Richmond, VA, for defendant.

### MEMORANDUM OPINION

KISER, Chief Judge.

Before me is defendant's motion for summary judgment. The parties have fully briefed the issues involved and have presented oral argument. The motion is therefore ripe for disposition. For the reasons contained herein, I am of the opinion that defendant's motion should be GRANTED.

### FACTUAL BACKGROUND:

This action is a claim for accidental death and dismemberment ("AD & D") benefits arising out of the fatal shooting by plaintiff Hilda Taylor Ayers ("Mrs. Ayers") of her late husband, Johnny Jefferson Ayers ("Mr. Ayers") on April 24, 1995, in their Martinsville, Virginia, residence. Mrs. Ayers' AD & D claim is being made under a group policy ("the Policy") issued by defendant Continental Casualty Company ("Continental") to employees of Bassett–Walker, Inc., Mr. Ayers'

employer. This action is governed by the Employment Retirement Income Security Act of 1974 ("ERISA").

The legal issues concern (1) whether Continental's decision to deny Mrs. Ayers' benefits should be reviewed *de novo* or under an "abuse of discretion" standard, and (2) whether Mr. Ayers died "accidentally" according to the terms of the Policy.

Continental issued a group AD & D policy which provided that Continental will "... insure eligible persons of the ... Insured ... and their eligible dependents ... for whom application is made for loss resulting from injury ..." The Policy defines "injury" as "bodily injury caused by an accident occurring while this policy is in force ..." The Policy also provides that "[i]ndemnities payable under this policy will be paid immediately upon receipt of due written proof of loss."

Continental received Mrs. Ayers' claim form for AD & D benefits relating to her husband's death on May 22, 1995. After reviewing the claim, Continental denied her claim on January 9, 1996, and Mrs. Ayers' counsel asserted her appeal rights under ERISA.

In July of 1995, Mrs. Ayers was indicted on charges of murder and the use of a firearm in the commission of murder. Her trial was held on November 13, 1995 in the Circuit Court of the City of Martinsville. At trial, Investigator Phillips testified that at approximately 6:30 p.m. on April 24, 1995, Mrs. Ayers walked into the police department and stated that she had shot her husband. Mrs. Ayers' blouse had been ripped and her left ear was swollen and red. She explained that her husband was drunk when she returned home earlier that evening at 5:30 p.m. They had an argument after which he went to the bedroom. Subsequently, he returned from the bedroom naked and confronted Mrs. Ayers in the kitchen. He grabbed her blouse from behind with one hand and began hitting her in the head with the other, knocking out her left earring. Mrs. Ayers reached into her left pants pocket and removed a revolver and with her left hand shot over her right shoulder. After she fired, her husband released her and she immediately ran from the

house, not knowing the condition of her husband.

Mr. Ayers was found lying naked on the basement floor with a single gunshot wound to the upper chest. His blood alcohol content was .23 which was approximately three times the legal standard for intoxication. Dr. David Oxley, the forensic pathologist who performed the autopsy, testified at trial that Mr. Ayers' death would not have been instantaneous, and that his wound would not have prevented him from walking down the stairway into the basement.

Witnesses for Mrs. Ayers testified, inter alia, that Mr. Ayers had physically abused his wife on numerous occasions; that he had a reputation for being a violent person; that Mrs. Ayers had a reputation for being peaceful; that Mr. Ayers verbally threatened to do physical violence upon his coworkers; that some of them carried guns for their safety when around Mr. Ayers; that Mr. Ayers had a serious drinking problem.

Mrs. Ayers, age 46, had been married to Mr. Ayers for twenty-nine years. Witnesses testified that he had physically abused her on numerous occasions but never to the point that she needed medical treatment. During the early years of her marriage, Mrs. Ayers went to the police several times but never pressed charges against her husband.

Mr. Ayers was an avid gun collector and, six months prior to his death, had purchased for Mrs. Ayers the gun which she used in shooting him. Mr. Ayers had also given Mrs. Ayers another gun, a two-shot derringer pistol, some three to five years earlier. She kept the gun in her pocketbook for protection. On April 24, the night of the shooting, Mrs. Ayers kept the gun in her pocket because she detected a wild look in Mr. Ayers' eyes and feared he would hit her. She testified that she had never threatened Mr. Ayers with the gun on any other occasion and that he had previously beaten her on numerous occasions even while she had the gun in her pocket. She testified that prior to the shooting she had placed the gun in her left pants pocket at least a dozen times or more. Mrs. Ayers testified that her husband had beaten her on and off for twenty-nine years and that she had reached a point where she could not take it anymore. She never retaliated on previous occasions when her husband beat her. She testified that she did not know where the bullet was going when she fired and did not intend to kill him but rather to disrupt the beating with the gun's noise and warn him off.

At trial, the jury was instructed on the crimes of first and second degree murder, voluntary and involuntary manslaughter, and use of a firearm in the commission of a murder. The jury returned verdicts of not-guilty on both the charges of murder and use of a firearm in the commission of a murder.

## DISCUSSION:

### I. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied*, 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986).

I find that there are no genuine issues of material fact, and that defendant is entitled to judgment as a matter of law.

### II. Standard of Review

■ The denial of ERISA benefits is reviewed under a deferential "abuse of discretion" standard when the benefit plan documents give the administrator or fiduciary of the plan discretionary authority to determine

eligibility for benefits or to construe terms of the plan. If the plan does not grant discretionary authority, denial of benefits is reviewed under a *de novo* standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Continental argues that the standard of review should be "abuse of discretion." I disagree.

To support its position, Continental points to the following language in the Policy:

[Continental will] insure eligible persons and their eligible dependents ... for loss resulting from injury, to the extent herein provided and subject to all the exceptions, limitations and provisions of the policy ... Indemnity for loss of life will be payable in accordance with the beneficiary designation and provisions respecting such payment with may be presented herein and effective at the time of payment ... Indemnities payable under this policy will be paid immediately upon receipt of due written proof of loss.

Continental asserts that because the "due written proof of loss" language requires a determination as to what written proof is adequate, the provision bestows sufficient discretionary authority to receive the more deferential standard of review. To accept Continental's argument here would effectively subject all ERISA benefits claims to the abuse of discretion standard of review. The language relied on by Continental is the minimum necessary to act on a claim, and, presumably, virtually all plans have similar language. Accordingly, a *de novo* standard is appropriate.

### III. Whether Mr. Ayers' Death Was "Accidental"

 The question in this action is whether Mr. Ayers' death was caused by "accident" when he was fatally shot by his wife while committing a violent and unprovoked assault upon her. Federal common law governs the interpretation of terms under an ERISA-regulated plan, but, as federal law on these insurance benefits issues is still in a formative stage, federal courts may borrow from state law. *Wickman v. Northwestern Mut. Nat. Ins. Co.,* 908 F.2d 1077, 1084 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990).

In *Tucker v. Life Ins. Co. of Virginia,* 228 Va. 55, 321 S.E.2d 78 (1984), the Virginia Supreme Court sets forth the applicable law as follows:

Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury.

*Id.* at 81 (citing *Scarborough v. World Insurance Co.,* 244 N.C. 502, 94 S.E.2d 558, 561 (1956); *see also Smith v. Combined Insurance Company of America,* 202 Va. 758, 120 S.E.2d 267, 269 (1961) (under Virginia law, an insured who "assaults another, or voluntarily enters into an affray and is hurt, has not suffered an accident.") (citing *Mutual Benefit Health & Accident Ass'n v. Ryder,* 166 Va. 446, 185 S.E. 894 (1936)). The *Tucker* court goes on to note that "it is generally held that if the insured voluntarily provokes or is the aggressor in an encounter, and knows, or under the circumstances should reasonably anticipate, that he will be in danger of death or great bodily harm as the natural or probable consequence of his act or course of action, his death or injury is not caused by an accident within the meaning of such a policy."

Plaintiff, pointing to the "knows or should know" language recited in *Tucker,* argues that Mr. Ayers had no reason to expect his wife to retaliate when he beat her on this occasion because she had not retaliated previously despite a twenty-nine year history of similar beatings. The rule that emerges from the Virginia cases, however, is that where the insured voluntarily assaults another or enters into an affray, as a matter of law, such action constitutes a violence-provoking act, and he should anticipate violence

in return.[1] Thus, where the insured violently assaults another without provocation, no further inquiry is required as to whether the decedent should have anticipated a violent response from his victim. The law imputes such knowledge to him.

The application of these principles precludes recovery in the instant case. Mr. Ayers deliberately, without provocation, violently assaulted his wife, putting himself in a position where, as a matter of law, he knew or should have known that serious bodily injury or death would be the probable consequences of his acts. In such a situation his death was not an "accident" under the terms of the policy.

## CONCLUSION

Viewing the complaint and all the evidence in the light most favorable to Mrs. Ayers, it is clear that there are no genuine issues of material fact; and defendant is entitled to judgment as a matter of law.

---

**1.** Judge Turk, in *Aliff v. Travelers Ins. Co.,* 734 F.Supp. 232, 235 (W.D.Va.1990), similarly found that "the rule in Virginia is that when an insured engages in criminal conduct, knowledge that he has placed himself in danger of death or great bodily harm is imputed to him."