Nancy M. SCARINCI

v.

Vince J. CICCIA, Secretary AT
& T Benefit Claim and
Appeal Committee.

Civ. A. No. 93–CV–3662.

United States District Court,
E.D. Pennsylvania.

March 2, 1995.

John Shniper, Phoenixville, PA, for plaintiff.

David H. Pittinsky, Martin C. Bryce, Jr., Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Vince J. Ciccia, Secretary, AT & T Ben. Claim and Appeal Committee.

Phillip B. Silverman, Harris & Silverman, Philadelphia, PA, for Cigna Ins. Co.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

The court has now considered the testimony that has been presented in this case and is prepared to make its Findings of Fact and Conclusions of Law and decision.

### FINDINGS OF FACT

1. Plaintiff Nancy M. Scarinci ("Scarinci") is a citizen of the Commonwealth of Pennsylvania and was an employee of the American Telephone and Telegraph Company ("AT & T") at its Allendale Road, King of Prussia, Pennsylvania facility until February 20, 1991.

2. Defendant Vince J. Ciccia is Secretary of the AT & T Benefit Claim & Appeal Committee. He has been Secretary of the AT & T Benefit Claim & Appeal Committee since May 1, 1991.

3. The AT & T Sickness & Accident Disability Benefit Plan ("SADB Plan") provides that AT & T shall be Plan Administrator and shall appoint an "Employees' Benefit Committee" with administrative responsibilities.

4. The Employees' Benefit Committee has the powers "necessary in order to enable it to administer the Plan" and adopts such by-laws and rules as it may find appropriate.

5. The Employees' Benefit Committee "shall grant or deny claims for benefits under the Plan and authorize disbursements according to the [SADB] Plan."

6. The Employees' Benefit Committee may delegate its authority to grant or deny claims for benefits.

7. Where the Employees' Benefit Committee has delegated its authority to grant or deny claims, the Employees' Benefit Committee hears appeals from the denial of claims for benefits.

8. When the Employees' Benefit committee reviews the denial of a claim, it "shall determine conclusively for all parties all questions arising in the administration of the Plan, and any decision of such Committee shall not be subject to further review."

9. The AT & T Sickness & Accident Disability Benefit Plan Summary Plan Description ("SADB Plan Summary") specifically gives the Employees' Benefit Committee the final and discretionary authority to determine eligibility for benefits under the AT & T SADB Plan.

10. The AT & T Benefit Claim & Appeal Committee, of which Ciccia is Secretary, is the successor to the Employees' Benefit Committee.

11. The AT & T Benefit Claim & Appeal committee has delegated to Authorized Benefit Managers in the AT & T Benefit Office the authority to initially grant and deny claims for benefits.

12. The AT & T Health Affairs Organization ("Health Affairs") has the initial responsibility of collecting and evaluating the medical evidence of an employee's disability. When an employee files a claim for benefits, Health Affairs sends information to the Benefit Office sufficient to allow the Authorized Benefit Manager to decide the claim.

13. The AT & T Benefit Claim & Appeal Committee decides appeals from an Authorized Benefits Manager's denial of a claim for benefits.

14. The AT & T SADB Plan appeal procedures mandate written claims and written statements of the petitioner's contentions:

> If the claimant or a person duly authorized by the claimant sends a written request for review of a denied claim, the person sending the request has the right:

> \*     \*     \*     \*     \*     \*

> To send to the Secretary, AT & T Benefit Claim & Appeal Committee, a written statement of the issues and any other documents in support of the claim for benefits.

15. The AT & T SADB Plan provides the "[a]ll employees whose term of employment is six or more months, shall become partici-

pants in the Sickness Disability Benefit Plan and be qualified to receive payments under the Plan on account of physical disability to work by reason of sickness.... Such payments shall terminate when disability ceases."

16. The AT & T Benefit Claim & Appeal Committee can only award benefits to AT & T employees bases on a condition existing while they were employed by AT & T:

Rights to Benefits. Neither the action of the Board of Directors in establishing this Plan, nor any action hereafter taken by the Board or the Committee shall be construed as giving to any officer, agent or employee a right to be retained in the service of the company or right or claim to any benefit or allowance after discharge from the service of the Company, unless the right to such benefits has occurred prior to such discharge.

17. The purpose of the AT & T SADB Plan is to provide for "the payment of definite amounts to employees when they are disabled by accident or sickness."

18. To qualify for benefits, the employee must "furnish certification satisfactory to the Company of disability and treatment from the physician who is caring for you ... [and] provide relevant information to the Benefit Office when requested."

19. Prior to August 22, 1990, plaintiff Scarinci worked in a clerical job for either AT & T or, prior to the divestiture of AT & T, for an affiliate company of AT & T.

20. Prior to August 22, 1990 and prior to any disability, Scarinci elected to accept the Facility Closing Plan offer for her facility which, pursuant to her acceptance, would have resulted in her voluntary termination of employment effective November 9, 1990. Plaintiff accepted a payment of approximately $10,000 as a benefit for accepting the Facility Closing Plan.

21. Commencing on August 22, 1990, Scarinci was absent from work due to knee surgery which was not related to her employment.

22. On August 11, 1990, Scarinci's doctor, John R. Donahue ("Dr. Donahue") performed a "medical plica resection" on Scarinci's left knee.

23. AT & T's Health Affairs Organization certified Scarinci's absence beginning August 29, 1990 and sickness disability benefits under the AT & T SADB Plan were paid accordingly.

24. The downsizing of AT & T's Allendale Road facility, where Scarinci was employed by AT & T, began in early 1990 and was completed in November 1990. Under the downsizing, the work performed at the Allendale Road facility was consolidated at other AT & T facilities, and its employees were laid off or transferred. Under AT & T policy, any employee then on disability was not terminated and would not be terminated for the duration of his or her disability.

25. Because of Scarinci's disability beginning August 22, 1990, her voluntary termination of employment, which would have become effective November 9, 1990, was postponed only for the duration of her sickness disability.

26. On September 25, 1990, Health Affairs received a "Physician's Report of Illness or Injury" dated September 21, 1990 from Dr. Donahue (plaintiff's personal physician) which indicated that Scarinci was disabled through October 8, 1990. Dr. Donahue diagnosed Scarinci's condition as chondromalicia left knee. Chondromalicia is the degeneration of the cartilage of the knee.

27. On September 26, 1990, Health Affairs contacted Dr. Donahue regarding Scarinci's return to work date of October 8, 1990. Dr. Donahue told Carol Balint of Health Affairs that Scarinci had an appointment scheduled for October 18, 1990 and that she could not return to work before that date.

28. On November 5, 1990, Carol Balint of Health Affairs received a "Physician's Report of Illness or Injury" dated November 1, 1990 from Dr. Donahue which stated that Scarinci had begun physical therapy on October 18, 1990 and that he estimated she could return to work on November 14, 1990.

29. David G. Glueck, M.D. ("Dr. Glueck"), a board certified specialist in family practice, is a physician employed part-time by AT & T until the present time.

30. Prior to her first visit to Dr. Glueck, Scarinci was told that Dr. Glueck would be examining her to determine if she was disabled and whether she could return to duty.

31. On November 26, 1990, Dr. Glueck physically examined the plaintiff. Based on his November 26, 1990 physical examination of Scarinci, Dr. Glueck concluded that she was not fit for work.

32. On February 7, 1991, Dr. Donahue, Scarinci's personal physician, wrote in Scarinci's Medical History that she was fit for "[s]itting work only." Scarinci's medical records were received by Health Affairs.

33. Dr. Glueck, AT & T's physician, again physically examined Scarinci on February 13, 1991. Dr. Glueck's contemporaneous notes reflect his February 13, 1991 physical examination of Scarinci. With respect to that examination, Dr. Glueck wrote that he: 1) evaluated the full range of motion of Scarinci's left knee, 2) examined her left knee for fluid or effusion, 3) palpitated her knees for abnormal sounds or creaks by placing his hand over her knees and feeling for fluid and creaking, and 4) examined her left knee for weakness of the ligaments or evidence of a tear in the ligaments.

34. Based on his February 13, 1991 physical examination of Scarinci, Dr. Glueck concluded that she was fit for work subject to limitations. On the third page of Dr. Glueck's notes, there is a paragraph beginning with the symbol "P—" which stands for plan in that paragraph, Dr. Glueck wrote that he told Scarinci that she could "resume sedentary clerical work with the restrictions of getting up and down for personal matters starting Monday, 2/18/91."

35. Dr. Glueck informed Dr. Donahue that Scarinci was fit for sedentary work:

I re-evaluated AT & T employee, Nancy Scarinci today. As you know she has been out of work since left knee Arthroscopic surgery on August 22, 1990. I am advising that she resume sedentary clerical work on Monday, February 18, 1991. She has been issued work restrictions of sedentary clerical work with sitting only and walking limited to personal needs.

36. On February 13, 1991, Carol Balint of Health Affairs learned that Scarinci could return to work with the restrictions of walking only for personal needs and sedentary work only.

37. An employee was only considered no longer disabled only if her department could accommodate the restrictions mandated by the AT & T physician and Health Affairs.

38. Scarinci's department concluded that it could accommodate the restrictions mandated by Dr. Glueck and Health Affairs with respect to Scarinci, i.e., sedentary clerical work with sitting only and walking limited to personal needs.

39. I find Dr. Glueck's testimony in this matter to be credible. I find the testimony of the plaintiff and her husband not credible on some material aspects of this matter.

40. On February 14, 1991, Balint of Health Affairs also informed Scarinci by letter that she was fit for work:

You have been found fit for duty by an AT & T physician with the following restrictions as of February 19, 1991:

(1) walking only for personal needs

(2) clerical/sitting position only These restrictions can be accommodated by your department.

41. On February 19, 1991, Balint received a letter from Scarinci dated February 16, 1991, which stated that Dr. Donahue did not agree with Dr. Glueck's decision that she was fit to return to work.

42. There was never a specific position for Scarinci to fill when she was recalled to work on February 19, 1991 because of the downsizing of the Allendale Road facility. However, absent the downsizing of the Allendale Road facility, there would have been a position for Scarinci because her department could have accommodated the restrictions mandated by the AT & T's physician, Dr. Glueck and Health Affairs.

43. On February 20, 1991, Scarinci was terminated under her pre-disability consent to the voluntary Facility Closing Plan. Scarinci's supervisor, Martin J. Lauterwald, communicated this to Scarinci in his February 26, 1991 letter to Scarinci.

44. Scarinci did not dispute Lauterwald's statement that she had elected to be terminated under the AT & T Facility Closing Plan.

45. In fact, in a conversation with Balint on November 14, 1990, Scarinci had admitted that she would be laid-off if she was found no longer disabled and returned to work.

46. In March 1991, Scarinci received a check for over $10,000.00 as severance pay under the AT & T Facility Closing Plan and, she cashed that check.

47. On March 21, 1991, Scarinci's attorney, John Shniper ("Shniper"), asserted a claim for "short-term sickness disability benefits" on behalf of Scarinci, and in support thereof offered various medical reports.

48. After Scarinci's claim for benefits was filed, Balint of Health Affairs sent the Benefit Office a copy of Scarinci's medical records, including Dr. Donahue's reports and Dr. Glueck's report and notes. Also included was Scarinci's medical history from Dr. Donahue which provided that Scarinci could return to "[s]itting work only" as of February 7, 1991.

49. On June 24, 1991, the AT & T Authorized Benefit Manager of the Benefit Office, Barbara Behrens, denied Scarinci's claim for short-term disability payments under the AT & T SADB Plan.

50. On July 3, 1991, Mr. Shniper, Scarinci's attorney, sent a letter to Barbara Behrens, the AT & T-Authorized Benefit Manager. Attached to Shniper' letter was a medical report from another physician, who had examined Scarinci on June 10, 1991. In his letter, Shniper asked that AT & T reconsider its decision denying Scarinci short-term disability benefits.

51. Barbara Coates of the AT & T Benefits Office telephoned Shniper on July 9, 1991 to acknowledge receipt of his July 3, 1991 letter. Coates explained to Shniper that, since the June 10, 1991 evaluation occurred after Scarinci's March 21, 1991 operation, it did not change the February 7, 1991 decision of Dr. Donahue that Scarinci was not disabled and that she could return to work on February 19, 1991 with restrictions. Shniper was informed that the Authorized Benefit Manager's decision denying Scarinci benefits remained unchanged.

52. The SADB Plan appeal procedures specifically mandated written claims and written statements of the issues involved.

53. On December 14, 1992 and on January 7, 1993, Shniper sent letters to defendant Ciccia, as Secretary of the AT & T Benefit Claim & Appeal Committee, appealing the denial of "short-term" benefits. Attached to these letters were copies of the Social Security Administration's decision and medical reports from a pain clinic dated January 20, 1992.

54. In support of her claim and later appeal to the AT & T Benefit Claim & Appeal Committee, Scarinci offered reports and statements from several physicians concerning her condition after February 20, 1991, the date of her termination.

55. Doctor Carl Goodman examined Scarinci for the first time on June 10, 1991, nearly four months after Doctors Glueck and Donahue concluded she was no longer disabled and was fit for sitting work. While Dr. Goodman concluded that "Mrs. Scarinci is disabled for her employment," he only made that conclusion as of "the present time", June 1991. Dr. Goodman, like Doctors Glueck and Donahue, also concluded that she "would be able to do a fully sedentary job without any walking around."

56. Doctors Evan Frank and Susan Samlaskn evaluated Scarinci in January 1992. The evaluations of Doctors Frank and Samlaskn did not state that Scarinci was disabled as of February 20, 1991 or not fit for sitting work as of that date.

57. Doctor Stephen Glasgow first examined Scarinci on November 13, 1991. In Dr. Glasgow's August 12, 1992 letter to Shniper, Scarinci's attorney, and Glasgow's medical notes concerning his examinations of Scarinci do not state that Scarinci was disabled as of February 20, 1991 or not fit for sitting work as of that date.

58. On January 26, 1992, the Benefit Office received a letter from Health Affairs finding, after a review of Scarinci's entire file and the additional information submitted by

Shniper, that Scarinci was not totally disabled as of her termination on February 20, 1991.

59. The entire AT & T Benefit Claim & Appeal Committee File was reviewed by the AT & T Benefit Claim & Appeal Committee.

60. After reviewing the entire file, the AT & T Benefit Claim & Appeal Committee rejected Scarinci's appeal.

61. The AT & T Benefit Claim & Appeal Committee was not subject to any quota or other requirements setting the amount of appeals it should sustain or overrule. The AT & T Benefit Claim & Appeal Committee has never been pressured by AT & T management to keep costs down by denying claims.

62. Approximately twenty percent of the cases reviewed by the AT & T Benefit Claim & Appeal Committee reverse the denial of claims by Health Affairs.

63. The decision of the AT & T Benefit Claim Committee in rejecting plaintiff's appeal was under all the evidence before it was reasonable.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of all claims in this matter pursuant to Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f).

2. Venue is proper in this judicial district because a substantial portion of the actions complained of herein occurred and had their intended effects within this judicial district and defendant regularly transacts business in this judicial district. 28 U.S.C. § 1991(b).

3. The AT & T SADB is a plan governed under the terms of ERISA.

4. Where an ERISA plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, review under the "arbitrary and capricious" standard, rather than the more stringent *de novo* standard, is mandated. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989).

5. Where an ERISA plan grants it administrator the power to interpret and construe the plan and decide questions as to eligibility, the arbitrary and capricious standard applies. *See Abnathya v. Hoffman–LaRoche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993) (discretion found where plan gave benefit committee " 'power to interpret and construe and Plan ... and to determine all questions relating to eligibility ... for disability income benefit' "); *Nazay v. Miller,* 949 F.2d 1323, 1335 (3d Cir.1991) (discretionary authority found based on authority to "interpret and construe provisions ... determine eligibility ... make and enforce rules ... decide questions"); *Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 119 n. 5 (3d Cir.1990) (discretion found based on authority to "administer ... decide all questions," interpret and apply terms).

6. The arbitrary and capricious standard applies to the decision of the AT & T Benefit Claim & Appeal Committee to deny Scarinci benefits. AT & T administers the AT & T SADB through the AT & T Benefit Claim & Appeal Committee. To qualify for benefits, an employee must furnish the Benefit Claim & Appeal committee "satisfactory" evidence of disability. Finally, the AT & T Benefit Claim & Appeal Committee has the discretionary authority "to ... determine conclusively for all parties all questions arising in the administration of the Plan."

7. Where the plaintiff has established the existence of sufficient facts to prove that the administrator of an ERISA plan had a conflict of interest, a modified arbitrary and capricious standard may be applied by the Court. *See Kotrosits v. GATX Corp. Non–Contributory Pension Plan for Salaried Employees,* 970 F.2d 1165, 1173 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992).

8. Plaintiff offered no evidence justifying the application of a modified arbitrary and capricious standard in the present case.

9. The mere fact that an employer acts as the administrator of its own ERISA plan is not significant enough to warrant a heightened standard of review. *Abnathya,* 2 F.3d at 45, n. 5; *Jordan v. Retirement Com-*

*mittee of Rensselaer Polytechnic Institute,* 46 F.3d 1264, 1274 (2d Cir.1995). In view of the fact that ERISA specifically contemplates that employers may act as the fiduciaries and administrators of ERISA plans, finding a conflict of interest merely because the AT & T Benefit Claim Appeal Committee is part of AT & T would be anomalous. *See* 29 U.S.C. § 1003(a); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). ("the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and employer").

■ 10. There is no evidence of bad faith on the part of the AT & T Benefit Claim & Appeal Committee. *See Abnathya,* 2 F.3d at 45, n. 5; *Nazay,* 949 F.2d at 1335.

11. There is also no evidence that the decision of the AT & T Benefit Claim & Appeal Committee was based on any considerations outside those mandated by the SADB Plan.

12. There is no evidence of record establishing that the decision of the AT & T Benefit Claim & Appeal Committee was clear error or not rational, *i.e.,* arbitrary and capricious.

13. Plaintiff's argument that the AT & T Benefit Claim & Appeal Committee acted arbitrarily and capriciously because the Social Security Administration awarded her Social Security Disability Insurance Benefits is rejected.

■ 14. Even under a modified arbitrary and capricious standard, the award of Social Security Disability Benefits does not establish that the plan administrator acted arbitrarily and capriciously. *See Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985) (rejecting similar argument Court held: "The arbitrary or capricious standard calls for less searching inquiry than the substantial evidence standard that applies to the social security disability cases"); *Freeman v. Sickness & Accident Disability Plan of AT & T Technologies, Inc.,* 823 F.Supp. 404, 415–16 (S.D.Miss.1993).

■ 15. The AT & T SADB Plan only provides for the award of benefits to AT & T employees based on events that occurred while they were employed by AT & T.

16. a. This interpretation of the AT & T SADB Plan was fully in accord with the plan's purpose which is "the payment of definite amounts to employees when they are disabled by accident or sickness."

17. The AT & T SADB Plan did not give the AT & T Benefit Claim & Appeal Committee the authority to rehire Scarinci, terminate her or consider the reasons for her termination when making a benefits decision.

■ 18. Significantly, "[i]n a case involving the interpretation of a provision of [an ERISA] plan ... under the arbitrary and capricious standard, the [defendant's] interpretation 'should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan.' " *Moats v. United Mine Workers of America Health & Retirement Fund,* 981 F.2d 685, 688 (3d Cir.1992) (citation omitted).

19. Plaintiff has offered no evidence showing that the AT & T Benefit Claim & Appeal Committee acted arbitrarily or capriciously by deciding not to award her benefits based on her condition after February 20, 1991.

20. Scarinci appealed the denial of her claim for benefits to the AT & T Benefit Claim & Appeal Committee in December, 1992. By February 1991, Scarinci and her attorney certainly knew that AT & T had concluded that: (1) she had agreed to be voluntarily terminated under the AT & T Facility Closing Plan and (2) she was not disabled as of February 19, 1991 and denied her claim for benefits based, in part, on Dr. Glueck's finding that she was fit for sitting work.

21. For all of the foregoing reasons, I hereby find in favor of defendant Vince J. Ciccia, Secretary AT & T Benefit Claim & Appeal Committee and against plaintiff, Nancy M. Scarinci.

366

## ORDER

AND NOW, this 1st day of March, 1995, in consideration of the foregoing Findings of Fact and Conclusions of Law, it is ORDERED that Judgment is ENTERED in favor of defendants, Vince J. Ciccia, Secretary, AT & T Benefit Claim and Appeal Committee, and Equicor, Inc., and AGAINST plaintiff, Nancy M. Scarinci.