Larry WARSHAW, Plaintiff,

v.

**CONTINENTAL CASUALTY COMPANY,**
**and NuVision, Inc., Jointly and**
**Severally, Defendants.**

Civil Action No. 96–71647.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 22, 1997.

David A. Kotzian, Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for Plaintiff.

Stanley A. Prokop, Plunkett & Cooney, Detroit, MI, for Defendants.

## *OPINION AND ORDER*

FEIKENS, District Judge.

Plaintiff Larry Warshaw's complaint is based on the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B); he seeks to recover long term disability benefits from the defendants, who are his former employer, NuVision Inc., and its insurer, Continental Casualty (CNA). Warshaw claims that on December 16, 1994 he became disabled while an employee of NuVision. Warshaw submitted a long term disability claim to CNA, which denied coverage on July 21, 1995 based on lack of objective evidence of disability. He filed this suit in April 1996.

Warshaw's complaint alleges that CNA wrongly denied him long term disability payments beginning 180 days after the onset of disability, and that he is entitled to "rehabilitative benefits" for the period after he began a lower-paid job with a new employer on February 7, 1997.[1] He also alleges that Nu-

Vision reneged on its promise to provide him long term disability benefits for the period of 90–180 days after onset of disability. During this period, NuVision did pay Warshaw short term benefits of approximately $100 per week, which are not at issue in this case.

I previously denied NuVision's motion for summary judgment, finding a fact dispute whether NuVision had made the alleged promise. A bench trial was held on August 5 and 7, 1997. The relief that Warshaw seeks includes: disability benefits from NuVision for the period 90–180 days after onset of disability at the rate of $8,225.70 per month; disability benefits from CNA thereafter until February 6, 1996 at the same rate; rehabilitative employment benefits from CNA for the period February 7, 1996 to the present; an order that plaintiff continue to receive rehabilitative employment benefits from CNA as long as his medical condition makes him eligible or until he turns 65, whichever is earlier; and attorney fees and prejudgment interest.

I find that the evidence supports the plan administrator's determination that Warshaw was not disabled under the terms of the policy. Therefore, Warshaw is not entitled to any of the relief requested.

## I. *Standard of review*

The United States Supreme Court has held that a plan administrator's interpretation of plan terms is subject to *de novo* review unless the plan gives the administrator discretionary authority to interpret the plan terms, in which case the plan interpretation will be upheld unless it is arbitrary and capricious. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The U.S. Court of Appeals for the Sixth Circuit ("Sixth Circuit") has ruled that factual determinations by plan administrators are also subject to *de novo* review in the absence of a specific grant of discretion, *Rowan v. Unum Life Insurance Company of America,* 119 F.3d 433 (6th Cir. 1997), though an earlier panel decision to the

---

1. An employee who otherwise meets the CNA policy definition of disability and is "gainfully employed in any occupation, other than his regular occupation, on a full-time, part-time, or par-

tial basis" is eligible for rehabilitation benefits. Wages are offset against the benefits according to a formula laid out in the plan.

same effect has been vacated and *en banc* review has been granted. *Perez v. Aetna Life Insurance Company*, 106 F.3d 146 (6th Cir.1997).

█ I apply *de novo* review to both the interpretation of plan terms and factual determinations made by the administrator. There was no language in the policy which could be reasonably construed as granting discretion to the administrator. CNA argues that the following language conveys the discretion necessary for "arbitrary and capricious" review: "TIME OF PAYMENT OF CLAIM: Benefits will be paid monthly immediately after We receive due written proof of loss." CNA argues that the word "due" vests it with discretion, since it implies the power to determine whether proof is adequate. I do not agree. This is a slender reed on which to find discretion and no further discussion is necessary.

## II. *Admissible evidence*

Plaintiff acknowledges that in general, review of denial of benefits is based on the administrative record. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368 (6th Cir.1994); *Perry v. Simplicity Engineering*, 900 F.2d 963 (6th Cir.1990). In this case, however, Warshaw argues that CNA deliberately refused to request records and interviews which were at its disposal. According to Warshaw, CNA insisted that it get the records directly from his physician rather than from Warshaw. Warshaw signed an authorization for CNA to have access to his medical records from his treating physician, Dr. Jagdish B. Bhagat, and for CNA to speak with Dr. Bhagat about his medical condition. Although Warshaw's condition had begun in 1990, CNA only requested records from December 16, 1994 to May 15, 1995, and never tried to call Dr. Bhagat.

█ In these circumstances, I find that all of Dr. Bhagat's medical records and testimony regarding Warshaw's condition are admissible. CNA cannot now exclude records which were available to it, but which it chose not to seek. Though review is limited to "the record before the administrator," *Perry* at 967, in this case all of Warshaw's medical records and history with Dr. Bhagat were "before" the administrator. This is consistent with the Sixth Circuit's ruling that where a plan administrator fails to give an employee an opportunity to present additional evidence during a claim review, the court will examine the additional evidence. *VanderKlok v. Provident Life and Acc. Ins. Co.*, 956 F.2d 610, 617 (6th Cir.1992).

█ Nevertheless, I am not free to consider evidence which was not reasonably available to CNA at the time of its denial.[2] This would violate the teaching of *Perry* that,

> In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision, applying a *de novo* standard. Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits.

900 F.2d at 966.

## III. *Entitlement to long term disability benefits.*

### A. Long term disability from CNA

Total disability is defined in the CNA policy as, "(1) Continuously unable to perform the substantial and material duties of his regular occupation; (2) Under the regular care of a licensed physician other than himself; and (3) Not gainfully employed in any occupation for which he is or becomes qualified by education, training, or experience." It is uncontested that Warshaw was not gainfully employed between January 5, 1995 and February 6, 1996, though he did receive severance pay under the terms of his employment agreement. Between December 21, 1994 and February 6, 1996 he received regu-

---

2. At trial, I permitted defendants to introduce the testimony of CNA's expert retained for litigation and that of two co-employees of Warshaw. I also permitted Warshaw to introduce evidence of his medical condition after the denial of benefits, for the purpose of showing damages. However I do not rely on any of this evidence in upholding the denial of benefits to Warshaw.

lar treatment from Dr. Bhagat and other physicians. Thus only the first requirement of the policy is in dispute: whether he was unable to perform the duties of his job.

As Executive Vice President of NuVision, Warshaw had responsibility for the company's manufacturing, distribution, retail, and franchise operations, and input into marketing and advertising. As early as late 1989 or early 1990, Warshaw complained of symptoms including high blood pressure, headaches, dizziness, and digestive problems. These symptoms became acute during a business trip to Kentucky, where he was hospitalized for three days. He testified that the symptoms persisted between 1991 and 1994, becoming worse in 1994. He was admitted to the emergency room of a local hospital in April 1994 and underwent a battery of tests. Warshaw said that his work performance declined in 1994 as a result. Yet he never sought medical accommodation, such as relief from some of his duties, out of fear that he might be fired.

On December 15, 1994 his symptoms flared again. The following day, a doctor advised him to stay away from work until Dr. Bhagat returned on December 21. On his return, Dr. Bhagat advised Warshaw to go on medical leave. Warshaw then applied for disability benefits.

I accept that Warshaw experienced the symptoms of which he complained. Nevertheless, the record discloses no organic problem which could not be controlled with medication. Warshaw suffers from gouty arthritis and was born with one kidney, but that is not the cause of his high blood pressure. (Bhagat dep. at 33.) While his symptoms suggested cardiovascular disease, multiple cardiac tests were negative. (Bhagat dep. at 55.) Neither was any abnormality found in his intestines. (Pl. ex. 1, p. B15.) It was determined that he suffers from "vasodepressor syncope." Although plaintiff attempted to describe this as a disabling condition, in reality it describes a set of symptoms. Dr. Bhagat testified that each of his various physical symptoms, including high blood pressure, can be controlled with medication. (Bhagat dep. at 39, 67–68.) There is no physical explanation for the failure of medication to control Warshaw's symptoms. Despite all the tests Warshaw has undergone, Bhagat testified, "We have no diagnosis." (Bhagat dep. at 78.)

■ With no known physical cause for Warshaw's symptoms, I cannot say that they were and are disabling. Defendants' theory is that he made up these symptoms and claimed disability because he knew that NuVision would be sold and his job terminated; Warshaw's claim is that his symptoms prevent him from working at his former job. Warshaw's blood pressure is sometimes high; but unlike many people with high blood pressure, this has not affected his heart and the record indicates that it can be controlled. Reviewing the record *de novo*, I conclude that Warshaw has failed to prove by a preponderance of evidence that he is disabled.

It may be that there is an emotional or psychological cause for Warshaw's symptoms, yet Warshaw never sought a psychiatric diagnosis, despite Dr. Bhagat's recommendations. (Bhagat dep. at 62.) Throughout the medical records and Dr. Bhagat's testimony, it is reported that Warshaw told doctors his symptoms were triggered by stress from his job. If I were free to receive new evidence in this case, I would consider a psychological evaluation relevant to a determination whether Warshaw had a psychologically-induced physical disability, or a mental/emotional disability. Without such evidence, though, I cannot find that such a disability exists.

Because I uphold CNA's determination that Warshaw was not disabled, Warshaw is not entitled to rehabilitative employment benefits from CNA, injunctive relief, or attorney fees.

## B. Long term disability from NuVision.

NuVision formerly had long term disability insurance which provided benefits beginning 90 days after the onset of disability. Accordingly, the Employee Handbook states that short term disability benefits—amounting to about $100 per week in Warshaw's case—will be covered by NuVision for the first 13 weeks (or 91 days) following disability. After NuVision switched insurers, the new

CNA policy raised the elimination period for long term disability from 90 to 180 days. According to Warshaw, after he received the new CNA policy he asked NuVision President Jonathan Raven to clarify long term disability coverage between 90 and 180 days after onset of disability, and Raven told him NuVision would provide coverage for that period provided that the insurance company found his claim valid.

Even if Raven did make this promise, it could have no effect, because Warshaw's disability claim was correctly denied. Therefore I need not determine whether the promise was made.

### IV. *Conclusion*

■ Although I review the administrator's denial of benefits *de novo*, my review is limited by law to the record on which the decision was made, along with evidence that was reasonably available to CNA. I cannot order that the case be reopened for a further investigation of Warshaw's condition. This is crucial in this case. It is crucial because plaintiff has the burden to prove his disability, and on this record that his not been shown. Plaintiff *did not consult a psychiatrist* or a psychologist as his doctor recommended. That was his decision to make. Yet his failure or refusal to do so bars relief. On this record, disability cannot be determined.

Therefore, plaintiff's claims against NuVision and CNA are hereby dismissed.

IT IS SO ORDERED.