**Benito T. PEREZ, Jr., Plaintiff–Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant–Appellee.**

**No. 95–1111.**

United States Court of Appeals, Sixth Circuit.

Argued April 23, 1997.

Decided July 1, 1998.

Timothy A. O'Rourke (argued and briefed), Hay & O'Rourke, Lansing, MI, for Plaintiff–Appellant.

Francis R. Ortiz (argued), K. Scott Hamilton (briefed), Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Jeffrey V. Stuckey (briefed), Richard D. McNulty, Dickinson, Wright, Moon, Van Dusen & Freeman, Lansing, MI, for Defendant–Appellee.

Before: MARTIN, Chief Judge;
MERRITT, KENNEDY, JONES,
NELSON, RYAN, BOGGS, NORRIS,
SUHRHEINRICH, SILER,
BATCHELDER, DAUGHTREY, MOORE,
and COLE, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which BOYCE F. MARTIN, Jr., C.J., KENNEDY, DAVID A. NELSON, RYAN, ALAN E. NORRIS, SILER, and BATCHELDER, JJ., joined. BOGGS, J. (pp 558–561), delivered a separate dissenting opinion, in which MERRITT, NATHANIEL R. JONES, DAUGHTREY, MOORE, and COLE, JJ., joined.

## OPINION

SUHRHEINRICH, Circuit Judge.

The matter before the en banc court today stems from a panel decision by this Court reversing Aetna Life Insurance Company's ("Aetna") decision to terminate disability benefits to Benito Perez, Jr., ("Perez") under a plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. The panel held that the language "[Aetna] shall have the right to require as part of the proof of claim satisfac-

tory evidence ... that [the claimant] has furnished all required proofs for [receipt of] benefits" did not vest discretion in Aetna to make benefits determinations.[1] *Perez v. Aetna Life Ins. Co.*, 96 F.3d 813, 825–26 (6th Cir.1996), *vacated,* 106 F.3d 146 (6th Cir. 1997). Given that conclusion, the panel reached the related issue of whether the de novo standard of review announced in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), applies to factual determinations made by a plan administrator.[2]

The panel's decision in *Perez* conflicted with a prior panel's decision in *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376 (6th Cir.1996). The *Yeager* panel held that similar plan language vested discretion in the plan administrator to make benefits determinations. *Id.* at 380.

To resolve this conflict, we voted to rehear the case en banc to address two specific issues: 1) whether the Plan language grants Aetna discretion; and 2) whether the de novo standard of review announced in *Firestone* applies to both fact determinations and plan interpretation, or only to plan interpretation. *Perez v. Aetna Life Ins. Co.,* 106 F.3d 146 (6th Cir.1997). For the following reasons, we conclude that the Plan language grants Aetna discretionary authority to make benefits determinations. We therefore do not reach the issue of whether the de novo standard announced in *Firestone* applies to factual determinations made by a plan administrator.

## I. FACTS

For sixteen years, Perez worked for the Motor Wheel Corporation, a division of Good-

---

1. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court held that "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority...." *Id.* at 115, 109 S.Ct. 948.

2. Since *Firestone* was decided, the federal courts of appeals have disagreed on whether the de novo standard of review applies to both plan interpretation and fact determinations made by a plan administrator or is limited only to plan interpretation. *Compare Pierre v. Connecticut*

*Gen. Life Ins. Co.,* 932 F.2d 1552, 1559 (5th Cir.1991) (practical considerations dictate that the de novo standard applies only to plan interpretation and a deferential standard applies to fact determinations), *with Luby v. Teamsters Health, Welfare, and Pension Trust,* 944 F.2d 1176, 1183–84 (3d Cir.1991) (de novo review applies to fact determinations unless plan administrator granted discretion to determine eligibility for benefits). In this case, both parties agree that Aetna's decision to terminate benefits encompassed fact determinations as opposed to plan interpretation.

year Tire and Rubber Company located in Lansing, Michigan. In 1984, Perez suffered a work-related injury when he jumped from a platform to avoid an explosion of molten steel. The accident fractured his left heel and foot. Doctors inserted metal screws and pins into Perez's foot and surgically fused his ankle joint. As a result, effective December 1, 1985, Aetna considered Perez "totally disabled" within the meaning of the Plan and he began receiving disability benefits.[3]

In 1987, Perez enrolled in Lansing Community College to pursue an associate's degree in business management.[4] On August 12, 1988, Perez's rehabilitation counselor wrote to Aetna estimating that "Mr. Perez will complete his educational program either at the completion of Spring or Summer term, 1989. Following completion of this program, job placement assistance will be provided until Mr. Perez has obtained employment." J.A. at 245. However, Perez did not complete his degree until March of 1991, approximately two years behind schedule. From 1985 to 1991, Aetna continued to provide disability benefits to Perez.

On April 8, 1991, Aetna informed Perez by letter that his benefits would extend "through June 30, 1991, or until such time as [he] secured employment, but not beyond June 30, 1991." J.A. at 330. In accordance with this letter, Perez has received no disability benefits from Aetna since June 30, 1991.

On June 24, 1991, Perez enrolled in a computer training course scheduled to last 12 weeks. In subsequent letters, Perez sought review of Aetna's decision to terminate his benefits and requested an extension of his coverage until he could complete additional training to make him employable. J.A. at 291–92, 310. Perez's rehabilitation counselor, in an unsigned March 18, 1992, letter

addressed to Aetna, described Perez's situation as follows:

Initial job placement efforts revealed that Mr. Perez needed computer skills to compete for entry-level jobs in the business field. His Business Management program at Lansing Community College did not include computer skills training, and with his prior work history comprised primarily of factory work, Mr. Perez was not suitably prepared for an entry-level business position.

Since mid-June, 1991, Mr. Perez has been involved with an individualized, hands-on computer skills training program with Smith & Bell Computer Training Institute, Inc. in Lansing, Michigan....

... Th[is] training program has had to be further extended because of major medical problems experienced by Mr. Perez from December 1991 through March 1, 1992....

In summary, it is my professional opinion that Mr. Perez was not yet competitively employable with the completion of his Associate Degree in Business Management.... [I]n today's highly competitive job market, Mr. Perez is at a disadvantage without additional short-term [computer] training. It is my understanding that Mr. Perez' LTD [Long–Term Disability] Benefits were discontinued because of the assumption that he was employable with the Associate Degree in Business Management. However, for the reasons described above, Mr. Perez was not yet employable....

J.A. at 441–42.

In response to Perez's repeated requests for an extension of his benefits, Aetna wrote to Perez on February 26, 1992:

You ... wrote us on September 9, 1991, and more recently on February 12, 1992.

---

**3.** The Plan defines "total disability" and "totally disabled" as "during the twelve month qualifying period and thereafter during any one period of disability, that the employee is unable, solely because of disease, accidental bodily injury or a pregnancy-related condition to work at any reasonable occupation." J.A. at 19. "Reasonable occupation" is defined as "any gainful activity for which the employee is, or may reasonably become, fitted by education, training, or experience, and in which other people of similar back-

ground are actually employed as their principal means of support." *Id.*

**4.** Michigan law requires its residents who suffer work-related injuries and receive disability benefits to obtain retraining where possible. Mich. Comp. Laws Ann. § 418.319(1) (West Supp. 1998). At the time of his accident, Perez had only a General Education Development (GED) diploma obtained while he was in the military.

You are requesting an extension of Long–Term Disability benefit coverage in order that you may secure additional training and expertise involving the use of personal computers.... We don't dispute that this additional training would be helpful but we feel that it is not essential in determining whether or not you presently have the training to pursue some reasonable occupation that others with the same training that you have are engaged in gainful work. We feel that you have acquired sufficient education and skills by virtue of your attaining your Associate of Arts Degree in Business Management and are now able to pursue some reasonable occupation. Therefore, we must refuse your request for extension of Long–Term Disability Benefits beyond June 30, 1991.

J.A. at 125–26.

This letter became Aetna's final determination that Perez was able to engage in a reasonable occupation and therefore no longer totally disabled under the Plan.

In addition to his benefits from Aetna, Perez collected workers' disability compensation from the State of Michigan until December 5, 1992. On that date, Perez was offered employment as a lab technician with the Laboratory of Clinical Medicine of Michigan State University. He began working there on December 7, 1992, but quit after only one full week on the job. After quitting, Perez applied for reinstatement of his worker's compensation benefits. In an administrative hearing, a Michigan worker's compensation magistrate denied Perez's request for reinstatement of his benefits, concluding that Perez could and did perform work as a lab technician.

Perez sued Aetna under ERISA "to recover benefits due to him under the terms of his plan...." *Id.* § 1132(a)(1)(B). The district court granted summary judgment to Aetna and denied Perez's cross-motion for summary judgment. Perez then moved to alter or amend the judgment under Fed.R.Civ.P. 59(e), which the district court denied. Perez appealed the district court's grant of summary judgment for Aetna and also its denial of his motion to amend the judgment. The original panel of this court reversed the district court's decision and we granted this en banc review.

## II. STANDARD OF REVIEW

We generally review a denial of a motion to alter or amend the judgment under Rule 59(e) for abuse of discretion. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982). However, when the Rule 59(e) motion seeks review of a grant of summary judgment, as in the case at bar, we apply a de novo standard of review. *Columbia Gas Transmission Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir.1991) (citing *Huff*, 675 F.2d at 122–23 n. 5).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed.R.Civ.P. 56(e)). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in favor of Perez, the non-moving party. *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 842 (6th Cir.1997) (citation omitted).

## III. COLLATERAL ESTOPPEL

Before turning to the principal issue on appeal, we must dispose of Aetna's argument that the refusal by a Michigan worker's compensation magistrate to reinstate Perez's worker's compensation benefits collaterally estops Perez from challenging Aetna's termination of his benefits. Specifically, Aetna contends that the magistrate's conclusion that Perez could and did perform the lab technician job precludes him from asserting that no reasonable occupation exists for which he is qualified.

Although Aetna raised collateral estoppel in its motion for summary judgment, the district court granted summary judgment without deciding this issue. Typically, we will not address issues unless ruled upon by the trial court below. *Maldonado v. National Acme Co.*, 73 F.3d 642, 648 (6th Cir.1996)

(declining to rule upon collateral estoppel issue not addressed by the district court). Only when "the proper resolution is beyond doubt" or "injustice might otherwise result" will we consider a collateral estoppel issue not addressed below. *Id.* (quoting *Meade v. Pension Appeals & Review Committee,* 966 F.2d 190, 194 (6th Cir.1992)).

▆▆▆ We decline to invoke this extremely narrow exception in this case because it is not "beyond doubt" that Aetna's collateral estoppel argument would prevail. Under Michigan law, Aetna "must also have been a party, or a privy to a party" in the state court proceeding to invoke the doctrine of collateral estoppel against Perez.[5] *Lichon v. American Universal Ins. Co.,* 435 Mich. 408, 459 N.W.2d 288, 297–98 (1990). *See also Nummer v. Treasury Dep't,* 448 Mich. 534, 533 N.W.2d 250, 253 (1995) (including mutuality in list of requirements necessary to give preclusive effect to administrative determinations under Michigan law). Since Aetna was not a party to the Michigan worker's compensation proceedings, we cannot conclude that "injustice might otherwise result" from our refusal to affirm the district court's grant of summary judgment on collateral estoppel grounds.

## IV. DISCRETIONARY AUTHORITY UNDER THE PLAN

▆▆▆ We now reach the primary issue in this case: whether the Plan vests discretionary authority in Aetna, the plan administrator. If it does, we must apply the arbitrary and capricious standard of review to Aetna's decision to terminate benefits. *Wendy's Int'l, Inc. v. Karsko,* 94 F.3d 1010, 1012 (6th Cir.1996) (citing *Firestone,* 489 U.S. at 111, 109 S.Ct. 948).

▆▆▆ We begin our analysis with the proposition that " '[t]he Court in *Firestone* ... did not suggest that "discretionary authority" hinges on incantation of the word "discretion" or any other "magic word." ' " *Johnson*

*v. Eaton Corp.,* 970 F.2d 1569, 1572 n. 2 (6th Cir.1992) (quoting *Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1453 (D.C.Cir.1992)). "Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe the terms of the plan.' " *Block,* 952 F.2d at 1453 (quoting *Firestone,* 489 U.S. at 115, 109 S.Ct. 948). While "magic words" are unnecessary to vest discretion in the plan administrator and trigger the arbitrary and capricious standard of review, this circuit has consistently required that a plan contain "a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan." *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1373 (6th Cir.1994). *See, e.g., Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1099 (6th Cir.1993) (absence of a clear grant of discretion dictates a de novo standard of review); *Anderson v. Great West Life Assurance Co.,* 942 F.2d 392, 395 (6th Cir.1991) (same); *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir.1989) (same).

Arguing that the Plan contains the requisite clear grant of discretion to the plan administrator, Aetna points to the following Plan language:

> Written proof of total disability must be furnished to [Aetna] within ninety days after the expiration of the [first twelve months of disability]. Subsequent written proof of the continuance of such disability must be furnished to [Aetna] at such intervals as [Aetna] may reasonably require....
>
> *[Aetna] shall have the right to require as part of the proof of claim satisfactory evidence ... that [the claimant] has furnished all required proofs for such benefits. ...*

J.A. at 32 (emphasis added).

Perez counters that this language does not constitute a clear grant of discretion because it does not specify *to whom* the written proof

---

5. Federal law requires us to consult the relevant state law to determine the potential preclusive effect of a prior state court judgment. 28 U.S.C.A § 1738 (West 1994). *See also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (noting that § 1738 "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered"). Because Aetna's collateral estoppel argument rests upon the decision of a Michigan agency, we consult the state law of Michigan.

of disability must be satisfactory. Both parties agree, however, that the locus of any discretion lies in the final sentence of the above quoted paragraph.

Numerous federal courts, including our own, have held that language similar to that contained in the Plan clearly grants discretion to the plan administrator. *Yeager,* 88 F.3d at 380–81 (claimant must submit "satisfactory proof of Total Disability to us"); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991) (disability determined "on the basis of medical evidence satisfactory to the Insurance Company"); *Snow v. Standard Ins. Co.,* 87 F.3d 327, 330 (9th Cir.1996) (company must be presented with what it considers to be satisfactory proof of the claimed loss); *Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 505 (7th Cir.1995) ("benefits will be payable only upon receipt by the Insurance Carrier or Company of . . . due proof . . . of such disability"); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 379 (7th Cir.1994) ("[a]ll proof must be satisfactory to us"); *Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir.1989) (disability "determined on the basis of medical evidence satisfactory to the Committee"); *Caldwell v. Life Ins. Co. of North America,* 959 F.Supp. 1361, 1365 (D.Kan.1997) (benefits paid upon receipt of "due proof" that employee is disabled); *Miller v. Auto–Alliance Int'l, Inc.,* 953 F.Supp. 172, 175 (E.D.Mich.1997) (benefits paid "when [insurer] receive[s] notice and satisfactory proof of loss") (citing *Miller* and *Yeager, supra* ); *Bollenbacher v. Helena Chem. Co.,* 926 F.Supp. 781, 786 (N.D.Ind.1996) (benefits paid "[w]hen the Company receives proof that the individual is disabled"); *Scarinci v. Ciccia,* 880 F.Supp. 359, 361 (E.D.Pa.1995) (to qualify for benefits, employee must "furnish certification satisfactory to the Company of disability"). Perez distinguishes these cases on the ground that the language at issue in each case required the proof or evidence of disability to be satisfactory *to the insurer or plan administrator.* Since the Aetna Plan does not contain such language, the question becomes whether in the absence

of such language—in grammatical terms an indirect object—the Plan constitutes a clear grant of discretion.[6]

 Because the Plan is governed by ERISA, we apply federal common law rules of contract interpretation in making our determination. *Pitcher v. Principal Mut. Life Ins. Co.,* 93 F.3d 407, 411 (7th Cir.1996). In developing federal common law rules of contract interpretation, we take direction from both state law and general contract law principles. *Regents of the Univ. of Michigan v. Agency Rent–A–Car,* 122 F.3d 336, 339 (6th Cir.1997). The general principles of contract law dictate that we interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense. *Id.* Other circuits agree with this plain meaning approach to interpretation of ERISA contract provisions. *Pitcher,* 93 F.3d at 411 (interpreting ERISA-regulated policy " '[i]n an ordinary and popular sense as would a person of average intelligence and experience . . . .' ") (quoting *Meredith v. Allsteel, Inc.,* 11 F.3d 1354, 1358 (7th Cir.1993)); *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan,* 38 F.3d 514, 517 (10th Cir. 1994) (applying plain meaning analysis); *Hughes v. Boston Mut. Life Ins. Co.,* 26 F.3d 264, 268 (1st Cir.1994) (giving language in an ERISA-regulated insurance policy its "natural meaning"). In applying this plain meaning analysis, we "must give effect to the unambiguous terms of an ERISA plan." *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1379 (6th Cir.1996).

Although many of our prior cases finding a clear grant of discretion involved ERISA plans which explicitly provided that the evidence be satisfactory "to the insurer," "to the company" or "to us," it does not automatically follow that in the absence of such language discretion has not been granted to the plan administrator. Both parties acknowledge that the Plan allows for Aetna to request and receive satisfactory evidence of total disability before an individual is entitled to receive continued benefits. We agree with Aetna

---

**6.** Neither party disputes that the Plan empowers Aetna to request receipt of "satisfactory evidence" of disability. The question is not who receives the evidence but rather who determines whether the submitted evidence is "satisfactory."

that this "right to require as part of the proof of claim satisfactory evidence" means, semantically, that the evidence must be satisfactory to Aetna, the only named party with the right to request such evidence. It naturally follows that Aetna, the receiver of the evidence, would review that evidence to determine if it constitutes satisfactory proof of total disability. It is simply implausible to think that Aetna would merely hold the evidence as a safekeeper or depository for a third party unnamed in the contract to review in making benefits determinations. This is all the more true when one considers that an insurance contract, even one governed by ERISA, is after all simply a contract—a mutual agreement between the two contracting parties.

In short, reading the contractual language in an ordinary and popular sense as we must, the only reasonable interpretation of the Plan is that Aetna requests the evidence, reviews it, and then makes a benefits determination.[7] To reach any other conclusion would violate the basic principle of contract law that courts are not permitted to rewrite contracts by adding additional terms. *See Phico Ins. Co. v. Providers Ins. Co.*, 888 F.2d 663, 667 (10th Cir.1989) (recognizing "the universal rule that courts will not make contracts under the guise of judicial interpretation"). *See also American Flint Glass Workers Union, AFL–CIO v. Beaumont Glass Co.*, 62 F.3d 574, 581 (3d Cir.1995) (noting that the four corners of the contract provide the starting point for contract inter-

pretation). We therefore conclude that the plan clearly grants discretion to Aetna because, under the only reasonable interpretation of the language, Aetna retains the authority to determine whether the submitted proof of disability is satisfactory.

Although the case before us today presents a slight variation, our conclusion that the Plan vests discretion in Aetna follows naturally from our prior Sixth Circuit decisions addressing similar plan language cases.[8] In *Miller*, we applied *Firestone* and held that the language "on the basis of medical evidence satisfactory to the Insurance Company" clearly vested discretion in the plan administrator. *Id.* at 983–84. In *Yeager*, we extended *Miller* and held that the language "satisfactory proof of Total Disability to us" also clearly vested discretion in the plan administrator. *Yeager*, 88 F.3d at 380. The district court in *Yeager* had found this contractual language ambiguous because it was unclear whether the phrase "to us" modified "submits" or "satisfactory proof of Total Disability." *Id.* at 381. The district court held that this absence of explicit contractual language meant that the plan administrator had not clearly been granted discretion under the plan. *Id.* In reversing the district court's decision, we stated:

We can find no meaningful distinction between the language in the present Plan and that in *Miller*. The critical requirement in *Miller* is that the evidence of

---

7. The rule of *contra proferentum* provides that ambiguous contract provisions in ERISA-governed insurance contracts should be construed against the drafting party. *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 895 n. 6 (6th Cir.1996). Citing this common law canon of contract interpretation, Perez argues that the Plan should be strictly construed against Aetna. The rule of *contra proferentum*, however, only applies to *ambiguous* contract provisions. *Id.* (refusing to consider rule where provision is unambiguous). Ambiguity requires two reasonable interpretations. *Id.* Furthermore, mere disagreement between the parties does not create ambiguity in the legal sense. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir.1992) (applying federal law of contract interpretation). Because the only reasonable interpretation of the Plan concludes that it vests discretion in Aetna to make benefits determinations, Perez's *contra proferentum* argument lacks merit.

8. Although we agree with Aetna on the merits, we note that Aetna could easily have obviated this entire controversy over the appropriate standard of review by simply inserting the language "to us" following "satisfactory evidence." It has long been the law in this circuit that plans containing such language clearly grant discretion to the plan administrator. *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983–84 (6th Cir. 1991). Aetna, however, failed to reflect our well-established precedent in the Plan. We hope that in the future insurance companies will take better notice of Sixth Circuit precedent and draft their contracts accordingly. Otherwise, valuable private and judicial resources will continue to be consumed deciding issues that could have been definitively resolved years earlier through sound contract formation.

disability be satisfactory. A determination that evidence is satisfactory is a subjective judgment that requires a plan administrator to exercise his discretion. Like the *Miller* plan, the Plan at issue in this case requires "satisfactory proof of total disability." It would not be rational to think that the proof would be required to be satisfactory to anyone other than [the insurance company]. Even if the phrase "to us" is interpreted as defining to whom the proof should be submitted, there is no reason to believe that someone other than the party that received the proof would make a determination regarding its adequacy.

*Id.* at 381.

Thus, in *Yeager* we concluded that a plan's failure to designate to whom the submitted proof must be satisfactory did not mean that discretion to determine eligibility benefits had not been clearly granted to the plan administrator. *Id.* Although the panel in *Yeager* noted that "the Plan language could have been clearer," it held that "[t]he mere fact that language could have been clearer does not necessarily mean that it is not clear enough." *Id.*

The panel in *Yeager* reached the only reasonable interpretation of the language at issue in that case when the panel concluded that "it would not be rational to think that the proof would be required to be satisfactory to anyone other than [the insurance company]." This case presents an issue identical to the one presented in *Yeager*. In reaching the same conclusion as the panel in *Yeager*, we reaffirm that decision today.

Given that the Plan clearly grants Aetna discretion to make benefits determinations, we have no occasion to reach the second en banc issue; whether the de novo standard of review announced in *Firestone* applies to the factual determinations made by Aetna.

## V. CONCLUSION

The prior panel in this case reviewed Aetna's decision to terminate benefits under the de novo standard of review. Today we hold that the arbitrary and capricious standard should have been applied. Accordingly, we remand the case to the original panel to review Aetna's decision to terminate benefits under the arbitrary and capricious standard.

BOGGS, Circuit Judge, dissenting.

This case involves a straight-forward interpretation of the meaning of words. The Supreme Court has set out the standard in *Firestone:* does the document grant discretion to the plan administrator in making decisions under the plan? *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Since the grant must be a clear and affirmative one, as the court correctly holds, *see* Majority Opinion at 555–556, it seems to me that the words at issue here, furnish "written proof," do not grant such discretion. I therefore respectfully dissent.

I

The court's opinion in this case carefully and correctly sets out the basic tenets of the law concerning the standard of review for decisions by the administrator of an ERISA plan to deny benefits to a claimant. *Firestone* requires that there be a grant of discretion to the administrator before such decision will be given the deference of the "arbitrary and capricious" standard of review. *See* Majority Opinion at 552 n. 1 (citing *Firestone,* 489 U.S. at 115, 109 S.Ct. 948). Otherwise, *"de novo"* review applies. *Ibid.* Under our decisions, that grant must be "clear." *See ibid.* at 555–556 (citing *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1373 (6th Cir. 1994); *Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1099 (6th Cir.1993)).

The majority also correctly notes that when the language of the plan clearly gives discretionary decision-making power to the administrator, courts have upheld such language. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991) ("evidence satisfactory to the Insurance Company"); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 379 (7th Cir.1994) ("satisfactory to us"). Where the majority goes astray is in holding that the language in our plan is "similar" to such language, and thus is governed by the same principles. The court's opinion correctly concedes that the two types of language are dissimilar in a very impor-

tant grammatical respect. One specifies to whom the proof must be satisfactory; the other does not. As the opinion notes, Aetna's language in our case lacks the crucial "indirect object." *See* Majority Opinion at 556, 557–558.

The court's opinion also (perhaps over-generously [1]) seems to concede that the cases finding discretion that it cites, *see* Majority Opinion at 555–556, all required the proof to be satisfactory to the administrator, and thus considers our case, in which no decision-maker is specified, as largely one of first impression.

The court errs in deciding that we may simply assume that the plan must mean that the proof is "satisfactory" to the administrator, for that is the only entity which could be the intended decision-maker. To me the difference between these two phrases, especially the difference to a sophisticated drafter, is enormous. When faced with the language "satisfactory proof" (or "written proof" or "due proof" or simply "proof"), the immediate response of any half-trained lawyer is "satisfactory to whom" (or, "proof" in whose judgment?). In this case, the Aetna drafter did not supply an answer, and it seems much more plausible that the default reading should be an objective standard, satisfactory to a neutral arbiter, or satisfactory in terms of the over-all meaning of the contract, rather than satisfactory to one of the two interested parties.

While individual ERISA plan participants generally have very little power over the exact terms of their plan, such plans are frequently negotiated in collective bargaining arrangements. In either instance, the worker or the worker's representatives might well find a significant difference between having their benefits determined wholly at the discretion of the plan administrator, usually a company chosen by the management of the plan, and having a neutral standard of proof. Reasonable participants reading the language of this plan would be quite unlikely to be on notice that they should be meticulous, and wary of the plan administrator, who will have enormous discretion.

## II

The majority's argument based on the structure of the approval process proves too much. Every benefit plan requires the submission of some type of claim. The benefit administrator has to know that one claims benefits. Then the administrator has to match the claim against some type of standard and make a decision. There is no dispute about that. Even in *Firestone*, itself, the plan required that a claimant apply for benefits when he or she is "physically or mentally unable to perform [his or her] job." *Firestone*, 489 U.S. at 105–06, 109 S.Ct. 948.

The question at issue here is whether in so doing, the administrator is held to an objective standard upon review, or is to be upheld unless a decision is not only objectively wrong, but also arbitrary and capricious. The majority's holding virtually eliminates the possibility of *de novo* review, unless the plan specifically says that *de novo* review will apply—the exact opposite of the result required by *Firestone*. *See Firestone*, 489 U.S. at 109, 109 S.Ct. 948. After all, how could there be a system in which benefits are claimed other than by applying to the plan administrator. *See Ayers v. Continental Cas. Co.*, 955 F.Supp. 50, 53 (W.D.Va.1996).

The majority holding, resting as it does primarily on the nature of the application process, also underscores the weakness of its grammatical argument. "Evidence satisfactory to the Insurance Company," as in *Miller*, 925 F.2d at 983, or "evidence satisfactory to the committee," as in *Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir.1989), are clear. Indeed, the concession in *Yeager*, noting that the language in that policy could be clearer, *see Yeager*, 88 F.3d at 381, and the majority's footnote 8 today, admonishing plan drafters, undercut the specific reasoning of *Yeager*, that there is "no

1. *Caldwell v. Life Ins. Co.* does involve a finding of a grant of discretion in a case where there is no indirect object or discretionary language. 959 F.Supp. 1361 (D.Kan.1997). *Patterson v. Caterpillar Inc.*, 70 F.3d 503, 505 (7th Cir.1995),

arguably does not have such language, though it does contain the stronger direction that the claimant must submit "such due proof as shall be … required." *See infra* pp. 560–561.

meaningful distinction between" the two types of language ["submit proof that is satisfactory to us" v. "submit satisfactory proof of total disability to us."]. *Id.* at 380–81.

Finally, it is well to note that the key plan language here does not even require "satisfactory proof," as in *Yeager.* Rather, it requires the claimant to furnish "written proof," and only later states that the claimant must show "satisfactory evidence ... that [he] *has furnished* all required proofs...." Majority Opinion at 555 (emphasis added). Obviously, if a claimant has submitted a claim with support that is objectively sufficient to prove the claim, that would have to be "satisfactory evidence" of his having furnished such proof! The nature of the proof required is itself qualified only by the term "written," and the grant of discretion, if there is to be one, must be carried simply in the language "written proof." Thus, only the majority's structural argument can possibly be a logical basis for its holding today.

### III

The large majority of courts that have ruled on language that does not contain a referent as to who shall decide the quality of proof submitted have held that such language does not grant discretion, and have applied *de novo* review.

A very recent Ninth Circuit case, *Kearney,* is the clearest. *See Kearney v. Standard Ins. Co.,* 144 F.3d 597, 600 (9th Cir.1998). There, a requirement of "satisfactory written proof" of loss was found not to create a discretionary standard of review. *Ibid.* at 605. The opinion specifically held that a previous Ninth Circuit case, *Snow v. Standard Ins. Co.,* 87 F.3d 327 (9th Cir.1996), did not dictate a discretionary standard of review, because the language in *Snow* ("proof satisfactory to the company") differentiated it from that in *Kearney* ("satisfactory written proof"). *Kearney,* 144 F.3d at 609–10. In so holding, the circuit chose between the decisions of two of its district courts—*Williamson v. Unum Life Ins. Co.,* 943 F.Supp. 1226 (C.D.Cal.1996), which came to the same conclusion, and *Atkin v. Standard Ins. Co.,* No. C95–01176 FMS, 1996 WL 88814, at *1 (N.D.Cal. Feb.16, 1996), which relied on

*Snow* to find that such language granted discretion.

In *Bounds v. Bell Atlantic Enter.,* 32 F.3d 337, 339 (8th Cir.1994), the 8th Circuit similarly held that "adequate proof of loss" did not confer discretion. This was confirmed in the more recent case of *Brown v. Seitz Foods, Inc.,* 140 F.3d 1198, 1199–1200 (8th Cir.1998), which involved the phrase "due ... proof of loss."

Additionally, clear decisions invoking *de novo* review were issued by district courts in the District of Massachusetts in *Cleary v. Knapp Shoes Inc.,* 924 F.Supp. 309, 312 (D.Mass.1996) ("submit proof of loss"); the Southern District of New York in *Sarosy v. Metropolitan Life Ins. Co.,* No. 94–CIV 5431(SHS), 1996 WL 426387, at *1 (S.D.N.Y. July 30, 1996) ("written proof of loss"); and the Western District of Virginia in *Ayers,* 955 F.Supp. at 53 ("due written proof of loss").

In the 4th Circuit case of *Quesinberry v. Life Ins. Co.,* 987 F.2d 1017, 1020–22 (4th Cir.1993), the court noted that both parties conceded that *de novo* review applied to language stating that the claimant must in accord with terms of the policy "file proof of loss."

The primary authority to the contrary appears to be the 7th Circuit's holding in *Patterson v. Caterpillar Inc.,* 70 F.3d 503, 505 (7th Cir.1995), although the language there could be considered a bit stronger than in our case, in that the plan stated that the claimant must file "such due proof as shall be ... required." Feeling themselves bound by *Patterson,* district courts in the 7th Circuit have held similarly. *See Bollenbacher v. Helena Chem. Co.,* 926 F.Supp. 781, 786 (N.D.Ind.1996) ("when the company receives proof"); *Infantino v. Waste Management, Inc.,* 980 F.Supp. 262, 266 (N.D.Ill.1997) (provide "proof" of disability). However, even within the 7th Circuit, in the case of *Lehmann v. UNUM Life Ins. Co.,* 916 F.Supp. 897 (E.D.Wis.1996), the district court for the Eastern District of Wisconsin held that "satisfactory proof" did not confer discretionary review.

In fact, the *Caldwell* case, from the District of Kansas, is the only clear holding from

an unfettered court that accepts the proposition that naked language requiring "proof," with or without some qualifier such as "due," "proper," or "satisfactory," is enough to be a clear grant of discretion to the plan administrator. *See Caldwell,* 959 F.Supp. at 1361.[2]

## IV

Thus, based both on the ordinary rules of English and the large preponderance of authority from other federal courts, we should hold that the language in Aetna's policy does not grant to Aetna the type of discretion required by *Firestone.* I therefore respectfully dissent.

---

2. District courts within our own circuit, understandably at something of a loss for guidance following *Yeager, Perez,* and the en banc rehearing of *Perez,* have reached mixed results. Judge Gadola in the Eastern District of Michigan (pre-*Yeager*) held that "receives proof" of loss did not confer discretion, *Holsey v. UNUM Life Ins. Co.,* 944 F.Supp. 573, 576 (E.D.Mich.1996); however, following *Yeager,* the same judge found that "satisfactory proof" did confer discretion. *Miller v.*

*Auto–Alliance Int'l, Inc.* 953 F.Supp. 172, 175 (E.D.Mich.1997). Judge Feikins, also in the Eastern District of Michigan, held that "due written proof of loss" did not confer discretion, *Warshaw v. Continental Cas. Co.,* 972 F.Supp. 428, 430 (E.D.Mich.1997), as did Judge Bell in the Northern District of Ohio in *Ragsdale v. Unum Life Ins. Co.,* 999 F.Supp. 1016, 1017–18 (N.D.Ohio 1998), with respect to a simple requirement for submission of "proof."