**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0733n.06

**No. 12-2351**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 08, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RICHARD BARRON, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  SILER, CLAY, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge.  Richard Barron, the beneficiary of an ERISA-governed healthcare plan, brought an action against Blue Cross Blue Shield of Michigan ("BCBS"), the plan's administrator, to recover benefits denied under the plan.  The district court granted BCBS's motion for summary judgment.  Barron appeals.  For the following reasons, we **AFFIRM**.

I.

Barron, a pedestrian, was struck by a motor vehicle in 2006.  At the time of the accident, he had medical coverage through two insurance policies.  The first, provided by his employer, was a self-funded benefit plan called the Chrysler Hourly Active Plan ("Hourly Active Plan").  The other was an individual, uncoordinated no-fault automobile insurance policy that Barron had purchased from Farmers Insurance Company ("Farmers").

Three documents govern the Hourly Active Plan: (1) the Chrysler Hourly Active Summary Plan Description ("Hourly Active SPD"); (2) the Chrysler UAW Health Care Administrative Manual ("Administrative Manual"); and (3) the Chrysler Collective Bargaining Agreement Manual ("CBA"). Sometime after the accident Barron retired and, in August 2007, his healthcare coverage switched to the Chrysler Hourly Retiree Plan. In January 2010, his coverage changed again–to the UAW Retiree Medical Benefits Trust for Chrysler ("URMBT"). Each of these is a self-funded benefit plan governed by ERISA. While BCBS administers each of the plans, Chrysler pays any claims that are paid to beneficiaries.

Barron has received ongoing medical treatment from the time of the accident to the time of his appeal, during which time his Chrysler coverage changed as described above. His medical expenses resulting from the accident have been paid by Farmers. He made claims under his Chrysler plans for those same medical expenses. Because Farmers paid the expenses in full, and the Chrysler plan purports to coordinate benefits with Barron's Farmers policy, BCBS denied his claims. Barron argues that, when construed properly, the Chrysler policy bars the coordination of benefits with his Farmers policy. Accordingly, Barron contends he is entitled to recover the money that Chrysler, through BCBS, would have had to pay for his medical expenses had he not been covered by the Farmers policy.

## II.

We review *de novo* a district court's grant of summary judgment. *King v. Taylor*, 694 F.3d 650, 661 (6th Cir. 2012). When the relevant plan documents clearly express the intent that the plan administrator be given discretionary authority to interpret the plan provisions and to determine

eligibility for benefits, the arbitrary and capricious standard of review applies. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).

Barron does not dispute that BCBS possessed complete discretion to construe the terms of his plans and make determinations with respect to his claims. Rather, he relies on *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), to argue that BCBS's "dual role as eligibility arbitrator and benefits payer" creates a conflict of interest that warrants the application of a less deferential standard of review.

In *Metropolitan Life*, the Court noted that a reviewing court should consider a conflict of interest as a factor in determining whether a plan administrator has abused its discretion in denying benefits. *Id.* at 115. In that case, however, the defendant was both the plan administrator and payer of plan benefits. *Id.* at 108. Here, BCBS serves only as the plan administrator and has no financial interest because Chrysler's plans are self-funded. Accordingly, Barron's reliance on *Metropolitan Life* is misplaced and the "arbitrary and capricious" standard of review applies.

III.

The dispute at issue centers on the construction of the documents that comprise Barron's BCBS policy–the Administrative Manual, the CBA, and the Hourly Active SPD. Barron relies on the following excerpt from the Administrative Manual:

> Coordination of Benefits (COB) is a means of apportioning and prioritizing liability for payment of health care claims when more than one employer-based group health care program is involved. . . . The program shall not coordinate with individual, group, or family policies of insurance purchased by an enrollee for which the enrollee pays more than one-half the cost.

The Administrative Manual goes on to state:

> The program having the first obligation to pay benefits is termed the "primary program" and the benefits such program provides are "primary". . . . The term "Other Program" is any other program or source of payment except the program. When the Other Program does not contain a COB provision, that other Program is always primary.

Since it is undisputed that the Farmers policy did not coordinate benefits, the parties agree that Farmers was primary and, thus, had the first obligation to pay. Because Barron paid the entire cost of the Farmers policy, he contends, based on the first excerpt above, that BCBS is estopped from coordinating his benefits with the benefits under his Farmers policy. Barron's analysis is complicated, however, by the presence of additional provisions. An excerpt from the 2003 CBA provides:

> Healthcare benefits paid under this Program shall not duplicate benefits from other sources, (e.g., group plans, comprehensive plans, pre-paid plans, governmental plans, etc.). . . . Benefits payable under the Program will be coordinated with and secondary to benefits provided or required by *any* group or individual automobile, homeowner's or premises insurance, including medical payments, personal injury protection, or no-fault coverage. . . . When the other program does not contain a COB provision, that program is always primary.

(Emphasis added). The Hourly Active SPD states:

> DaimlerChrysler reserves the right to amend, modify, suspend or terminate all or parts of its benefits plans or programs described herein, provided, however, that *no action shall be taken to contradict the terms of the most current collective bargaining agreement.*

(Emphasis added). The parties agree that the 2003 CBA is the most current collective bargaining agreement applicable to the various Chrysler insurance plans held by Barron. Furthermore, Barron does not dispute that the CBA's provisions trump any contradictory language in the Administrative Manual. Barron, therefore, rests his claim on the assertion that the Administrative Manual's non-

coordination clause does not contradict the CBA's terms. The district court disagreed, finding a clear contradiction in the documents because the CBA contained an "unambiguous provision" that provided for the coordination of Chrysler Plan benefits with the very type of insurance that Barron held with Farmers. We find the district court's analysis compelling.

In his non-contradiction argument Barron contends that although the CBA provision includes "any group or individual coverage," it actually intends to allow coordination only when the "other plan" was obtained as part of a group health care plan. In support of this proposition, Barron cites the portion of the CBA stating that its COB provisions are "intended to prevent duplicate benefit payments when an individual is covered under more than one health care plan." Barron relies upon the use of the word "plan" throughout the Chrysler documents. Barron fails, however, to identify any authority indicating that "plan" necessarily means a group plan and cannot include an individually purchased insurance plan like the Farmers policy at issue.

In interpreting the terms of the BCBS plan, we apply federal common law rules of contract, taking direction from both state law and general contract principles. *Perez*, 150 F.3d at 556. General principles of contract law require that we interpret the plan's provisions "according to their plain meaning, in an ordinary and popular sense." *Id.* In applying the plain meaning analysis, "we must give effect to the unambiguous terms of an ERISA plan." *Id.* Barron fails to reconcile the clear, unequivocal language employed in the portion of the CBA excerpted above–"any group or individual automobile . . . insurance"–with his claim that the CBA does not coordinate with individual plans. Thus, Barron's policy from Farmers falls within the scope of the CBA provision permitting coordination.

Based on the arbitrary and capricious standard that applies, we must determine whether BCBS's decision to deny benefits to Barron was "rational in light of the plan's provisions." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 658 (6th Cir. 2013). "We must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational [differing] interpretation." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). Based on the contractual interpretation discussion above, we cannot say that the administrator's decision to coordinate benefits was irrational in light of the plan's provisions. Accordingly, BCBS's decision to deny Barron's claim was not arbitrary and capricious.

**AFFIRMED.**